866 A.2d 292

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Daniel SARANCHAK, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 16, 2004.

Decided Jan. 19, 2005.

492

494

496

Stuart Brian Lev, Esq., Shawn Nolan, Esq., Matthew C. Lawry, Esq., Philadelphia, for Daniel Saranchak.

Claude A. Lord Shields, Esq., Jonelle Harter Eshbach, Esq., Pottsville, for Commonwealth of Pennsylvania.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

BAER, Justice.

This is an appeal from an order of the Common Pleas Court of Schuylkill County dismissing a capital, post conviction relief petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S § 9541–9546. For the following reasons, we affirm.

On October 15, 1993, Daniel Saranchak (Appellant) was drinking with a friend, Roy Miles (Miles), at Mickey Courtney's Sportsmen Bar (Courtney's Bar) in Pottsville, Pennsylvania. Appellant told Miles that he knew where they could acquire some money, but that they might have to kill someone to obtain it. Thereafter, the two men left the bar and went to Appellant's brother's house. Appellant obtained a .22 caliber rifle from his brother, feigning that he and Miles were going hunting. After leaving his brother's house, Appellant and Miles went to a second bar and purchased two quarts of beer before driving to a residence in Cumbola, Pennsylvania (the Residence) shared by Appellant's 87–year–old grandmother (Grandmother) and his uncle, Edmund Saranchak (Uncle).

Before entering the Residence, Appellant stated that he was going to get some money from Grandmother. Appellant and Miles entered the Residence through an unlocked basement door. Once inside, Appellant walked directly to the sofa in the basement and shot Uncle in the head killing him almost instantly. Appellant rolled Uncle over, while Miles rifled through the victim's pockets stealing his money. Appellant and Miles then went to Grandmother's second floor bedroom. Appellant asked Miles to shoot Grandmother, but he refused. Upon awakening, Grandmother asked, "Danny is that you?" Appellant then fatally shot Grandmother once in the head. Appellant and Miles proceeded to lower the bedroom's blinds and search Grandmother's room for money. They eventually stole some money from Grandmother's purse.[1]

Uncle had a breakfast meeting scheduled with his employer for the next morning. When Uncle failed to appear, his employer went to his home and spoke with a neighbor, who indicated he had not seen either victim since the previous day. Employer and the neighbor decided to enter the home, and upon doing so discovered Uncle's body. They called the police, who responded and found Grandmother's body. After securing the crime scene, police canvassed the neighborhood and questioned neighbors. Based upon the information obtained, police interviewed Appellant's mother who, among other things, told the police that Appellant had "gone shooting" the night before. She also informed police where Appellant was residing. Based upon mother's information, the police obtained a search warrant for Appellant's apartment and seized a .22 caliber rifle.[2]

On October 16, 1993, Appellant was taken into custody, transported to a local police station and twice advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He confessed to

1. Appellant and Miles also found a locked safe, but were unable to open it.

2. Later testing established that the casings found adjacent to both victims' bodies were fired from that weapon.

killing Uncle, but denied killing Grandmother.[3] Appellant was eventually charged with two counts of first degree murder, burglary, robbery, and conspiracy.[4]

Prior to trial, the trial court appointed a psychiatrist with expertise in the areas of drug and alcohol addiction to evaluate Appellant's competency to stand trial and to opine as to whether Appellant's confession was voluntary. Trial counsel, however, failed to provide the psychiatrist with all of Appellant's school, mental health, and hospital records. After evaluating Appellant, the psychiatrist opined that Appellant understood the consequences of his actions and did not suffer from any major psychiatric deficit or mental disability which would have prevented him from comprehending the proceedings or assisting in his own defense.

On September 6, 1994, Appellant pled guilty to two counts of general homicide. After a degree of guilt hearing, the trial court determined Appellant had committed two counts of first degree murder, burglary, robbery, and conspiracy. The Commonwealth sought the death penalty, and requested that a jury determine the appropriate sentence. During both the degree of guilt hearing and the penalty phase hearing, co-defendant Miles testified regarding the events in question. On cross-examination, however, Miles invoked his Fifth Amendment right against self-incrimination in regard to large amounts of cash found on his person soon after the murders. After the penalty phase hearing, the jury found two aggravating circumstances: that the murders were committed during the course of the commission of a felony and that Appellant was convicted of another murder, committed either before or at the time of the offense.[5] The jury found no mitigating factors, and set the penalty at death.[6] On September 15, 1994,

---

3. At some point after his arrest, Appellant also confessed both murders to a Schuylkill Children and Youth Services (CYS) caseworker involved with his children.

4. 18 Pa.C.S. §§ 2502(a), 3502(a), 3701 and 903, respectively.

5. 42 Pa.C.S. §§ 9711(d)(6) and 9711(d)(11), respectively.

6. *See* 42 Pa.C.S. § 9711(c)(1)(iv); *Commonwealth v. Basemore*, 525 Pa. 512, 582 A.2d 861 (1990) (holding that the verdict must be set at death

the trial court formally imposed the jury's sentence of death for both first degree murder convictions, and further sentenced Appellant to consecutive maximum sentences for the remaining three felonies. The imposition of the death penalty mandated that this Court consider Appellant's direct appeal. *See* 42 Pa.C.S. 9711(h). We did so, and affirmed the trial court decision on April 24, 1996. *Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268, 271 (1996) (*Saranchak I*).

Appellant subsequently filed a *pro se* petition for relief pursuant to the PCRA. On May 28, 1997, the PCRA court dismissed the petition without a hearing for lack of merit. Appellant timely filed an appeal with this Court on June 26, 1997. On November 8, 1999, this Court issued a *per curiam* order vacating the PCRA court's order and remanding the case. *Commonwealth v. Saranchak,* 559 Pa. 111, 739 A.2d 162 (1999) (*Saranchak II*). The Defender Association of Philadelphia was appointed as new counsel, and, on December 7, 1999, filed an amended PCRA petition. Subsequently, Appellant wrote the PCRA court expressing his desire to discharge the Defender Association and forego further legal proceedings. The court conducted a thorough colloquy with Appellant and determined that his desire to dismiss counsel and waive all further proceedings was knowing, voluntary and intelligent. The court granted Appellant's prayer and dismissed the amended PCRA petition.

The Defender Association appealed to this Court, asserting that the waiver was invalid because no competency hearing had been conducted. While the appeal was pending, then-Governor Ridge signed a death warrant setting November 8, 2000 as the date for Appellant's execution. The Defender Association requested that we stay the scheduled imposition of the death penalty. On October 25, 2000, this Court held the matter in abeyance pending supplementation of the record by the PCRA court. See *Commonwealth v. Saranchak,* 570 Pa. 521, 810 A.2d 1197, 1198 (2002) (*Saranchak V*). At the direction of the PCRA court, Larry A. Rotenberg, M.D.,

if the jury unanimously finds at least one specified aggravating circumstance and no mitigating circumstances).

Director of Psychiatry at the Reading Hospital and Medical Center, conducted a psychiatric evaluation and submitted a report. On November 3, 2000, the PCRA court held a hearing, and Dr. Rotenberg testified that Appellant was competent and had the requisite ability to waive knowingly all further legal proceedings. On November 6, 2000, after reviewing the record from the PCRA court's competency hearing, this Court permitted Appellant's dismissal of the Defender Association and cessation of legal proceedings to stand. *Commonwealth v. Saranchak,* 564 Pa. 136, 764 A.2d 1052 (2000) (*Saranchak III*). Accordingly, we found the Defender Association lacked standing to represent Appellant, denied the Association's request for stay of execution, and dismissed its appeal taken on Appellant's behalf.

Finding this Court unavailing, on November 7, 2000, the Defender Association filed a next-friend petition[7] seeking a stay of execution in federal court. The United States District Court for the Middle District of Pennsylvania held an emergency hearing. During the course of this proceeding, Appellant testified that he did not wish to pursue further appeals, and wanted to be executed. At the hearing's conclusion, the federal trial court found that the Association did not meet the requisite criteria to be designated next-friend, and that it had not demonstrated Appellant's incompetence.

The Association immediately took an appeal to the United States Court of Appeals for the Third Circuit, which entered a

---

7. A next-friend may petition the court on behalf of an incompetent person. "Next-friend" standing in a federal *habeas* proceeding is by no means granted automatically to whomever seeks to pursue action on behalf of another; a next-friend must provide adequate explanation-such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute an action and must be truly dedicated to the best interest of the person on whose behalf he seeks to litigate, and have some significant relationship with that person. *See* 28 U.S.C. § 2242; *see also Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). An individual petitioning as next-friend seeking relief for a prisoner under the PCRA must demonstrate that the prisoner is incapable of making a rational decision concerning pursuit of PCRA relief in order to obtain standing to pursue such relief on the prisoner's behalf. 42 Pa.C.S. § 9541 *et seq.; see also Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271 (2002).

stay of Appellant's execution. *Saranchak v. Horn,* No. 00–9009, Order (3d Cir., November 8, 2000). The Commonwealth immediately sought **vacatur** of the stay from the United States Supreme Court. During the pendency of the Commonwealth's application to the U.S. Supreme Court, the Association filed a second request for stay of execution with this Court citing the Third Circuit's grant of the stay, and submitting to us a signed declaration from Appellant indicating his desire to retract his previous waiver of appellate rights. Before this Court could act upon the second request for stay of execution, the U.S. Supreme Court declined to vacate the Third Circuit Court's order granting stay. *Horn v. Saranchak ex rel. Troup,* 531 U.S. 986, 121 S.Ct. 444, 148 L.Ed.2d 449 (2000). Upon receipt of such notice, the Association withdrew its application for stay pending before this Court.

His execution averted by virtue of the Third Circuit's stay, on November 20, 2000, Appellant filed a "motion for reargument" in this Court seeking reinstatement of the Association as his counsel, the grant of a new panoply of post-conviction rights and a remand of the proceedings to the trial court for full consideration of his amended PCRA petition. On February 7, 2001, this Court retained jurisdiction and ordered the PCRA court to conduct a colloquy with Appellant to determine whether he had, indeed, changed his mind regarding representation and desired to pursue PCRA rights. *Commonwealth v. Saranchak,* 564 Pa. 250, 767 A.2d 541 (2001) (*Saranchak IV*). Appellant testified to his change of mind, and sought representation by the Association and full consideration of the varied arguments raised pursuant to the PCRA. Upon consideration of the record made before the PCRA court, this Court granted Appellant's application for reargument and reinstated his amended PCRA petition. *Commonwealth v. Saranchak,* 570 Pa. 521, 810 A.2d 1197 (2002) (*Saranchak V*). Following remand, the PCRA court held hearings on Appellant's amended petition on February 11 and 19, 2003. By Order dated July 8, 2003, the PCRA court denied all relief sought pursuant to the amended PCRA petition. This timely appeal followed.[8]

8. Sentences of death are subject to automatic review by this court. 42 Pa.C.S. § 9711(h)(1).

 Appellant raises eleven issues of counsel ineffectiveness.[9] In order to establish a claim of ineffective assistance of counsel pursuant to the test set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), Petitioner must "first demonstrate that the underlying claim is of arguable merit; then, that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate Appellant's interest; and, finally, that but for the act or omission in question, the outcome of the proceedings would have been different." *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356—357 (1995).

 In his first issue, Appellant contends that trial counsel was ineffective for failing to investigate adequately the potential of a diminished capacity defense and to supply the court-appointed psychiatrist with all of Appellant's relevant records. By asserting a diminished capacity defense, a defendant attempts to prove that he is incapable of forming the specific intent to kill. If the defendant is successful, first degree murder is mitigated to third degree. *See Commonwealth v. Legg*, 551 Pa. 437, 711 A.2d 430, 433 (1998). To prove a claim of diminished capacity, expert psychiatric testimony is admissible to address mental disorders affecting the cognitive functions of deliberation and premeditation necessary to formulate specific intent. *See id.*

The premise for this argument is that scrutiny of Appellant's school, mental health and hospital records would have revealed a history of chronic alcoholism. Moreover, a careful investigation at the time of the murder would have revealed

9. We note that this matter was filed prior to our recent decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), abolishing the rule first established in *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977) that claims must be raised at the first possible stage of review. Accordingly, the rule in *Hubbard* applies to the case *sub judice*. Here, Appellant was represented on direct appeal by the same counsel that represented him at trial. Under Pennsylvania law, trial counsel cannot be expected to raise his own ineffectiveness on direct appeal, *Grant* at 733; *Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998), and these proceedings offer Appellant his first opportunity to challenge trial counsel's performance. Accordingly, Appellant's claims of trial counsel's ineffectiveness were not waived on direct appeal.

that upon arrest Appellant gave police bizarre statements attempting to tie his behavior to some type of secret military mission. Appellant's argument is that such statements and prior treatment were the result of an incapacitating intoxication and the concomitant diminished capacity. In support of this argument, Appellant retained the same psychiatrist who had testified to his mental capacity during the initial proceedings, and provided him with all of Appellant's relevant school, mental health and hospital records.[10] At the PCRA hearing, the psychiatrist opined that had this information been available to him at the time of the original proceedings, he would have offered expert testimony that Appellant was suffering from a substance induced psychotic disorder or delusional disorder that prevented him from forming the requisite intent for murder and rendered him incapable of conforming his conduct to the requirements of the law.

We consider initially whether Appellant suffered prejudice because of counsel's inaction, in accordance with *Pierce's* third criteria. We note that "[i]f it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998). We conclude that even if counsel would have presented the psychiatrist's revised testimony to the court at the degree of guilt hearing, the court, nevertheless, would have returned a verdict of first degree murder. As noted in the Commonwealth's brief, the instant case is strikingly analogous to *Commonwealth v. Stevens*, 559 Pa. 171, 739 A.2d 507 (1999). There, a psychiatrist who initially interviewed the defendant opined that, in her view, there was no basis for any

10. As previously mentioned, the record indicates that during the initial 1994 proceeding, trial counsel was aware of these records and, nevertheless, did not provide them to the psychiatrist. At the degree of guilt hearing, trial counsel did present evidence of Appellant's intoxication on the night of the murders in an attempt to establish diminished capacity. Nevertheless, Appellant now argues that trial counsel inadequately investigated and presented such defense.

mental health defenses. Trial counsel relied upon that diagnosis in deciding to forego a diminished capacity defense. After Stevens' bench trial and sentencing, appellate counsel obtained background information which allowed the same expert to opine that a diminished capacity defense could have been presented had she been given the additional background information. Stevens argued that reliance on a pre-trial psychiatric examination could not constitute a reasonable basis for failing to pursue a diminished capacity defense because of counsel's underlying ineffectiveness for failing to provide the psychiatrist with Stevens' social history and past mental health problems. In *Stevens,* our Court initially noted that the PCRA court, who was also the factfinder in Stevens' bench trial, stated that regardless of the expert's change in diagnosis, it would still have concluded that Stevens had the capacity to form the specific intent to kill at the time of the murders. In this regard, our Court ultimately held as follows:

> Notwithstanding [the psychiatrist's] revised diagnosis of Appellant's psychosis from the trial to the PCRA hearings, the trial court found through circumstantial proof that the Commonwealth had established beyond a reasonable doubt that Appellant had the specific intent to kill, and therefore determined that Appellant suffered no prejudice by pursuit of a defense that would have been unsuccessful had Appellant's counsel presented it. We agree with the finding of the trial court that Appellant has not proved, by a preponderance of evidence, that there was a reasonable probability that presentation of expert testimony concerning Appellant's psychosis would have successfully prevented the Commonwealth from proving Appellant's premeditation beyond a reasonable doubt.

*Id.* at 517.

In the case before us, the PCRA judge, who was also the judge at the degree of guilt hearing, looked to the circumstances surrounding the night of the murders and concluded that there was an overwhelming amount of evidence that demonstrated conclusively Appellant's ability to formulate the specific intent to kill. The PCRA court examined the chronol-

ogy of events. Appellant stated that he knew where he could get some money at 8:30 p.m. on October 15, 1993. At 11:00 p.m., Appellant left Courtney's Bar with Miles. At midnight, Appellant retrieved a .22 caliber rifle. Appellant then proceeded to a second bar with Miles, where the two men purchased two quarts of beer. Appellant then drove to Cumbola, Pennsylvania, parked in Grandmother's driveway, and stated that he was going to get some money from Grandmother. Appellant took the rifle, entered the house through the basement door, walked directly to a sofa in the basement, and shot Uncle in the forehead before taking his wallet. Appellant then proceeded to the second floor where Grandmother was sleeping. Upon being asked by her, "Danny is that you?," Appellant raised his rifle and shot her in the forehead. Before leaving, Appellant took money from Grandmother's purse and unsuccessfully tried to open a closet safe. Eventually, Appellant was apprehended and confessed to his involvement. Accordingly, the PCRA court found that "the complex series of actions [Appellant] took on the night of October 15, 1993, as well as the statements he made to Miles at Courtney's Bar and statements to the investigating officers after the crimes, provide compelling evidence of [Appellant's] intent to commit a robbery and, if necessary, to kill in order to obtain money." We agree with this analysis. As in *Stevens,* even if Appellant would have developed psychiatric testimony concerning diminished capacity, the defense would have failed.

Appellant's second claim is that trial counsel was ineffective for failing to pursue a motion to suppress an incriminating statement and to advise Appellant of his right to continue his challenge to the incriminating statement notwithstanding his decision to enter a general plea of guilty on the murder charges. Appellant argues that the statement should have been suppressed because he invoked his right to silence after confessing to killing his Uncle, by saying that such information was "classified" and by responding to questions regarding Grandmother's murder by stating, "Don't ask me that." As with Appellant's first claim, this contention of trial counsel's ineffectiveness fails the prejudice prong of *Pierce* due to the

overwhelming evidence of Appellant's guilt. In light of the previously articulated evidence of Appellant's guilt, co-defendant Miles' testimony and Appellant's explicit and proper confession of both murders to a CYS caseworker,[11] who testified at both the degree of guilt and penalty phase hearings, Appellant fails to demonstrate prejudice resulting from his trial counsel's failure to pursue to fruition suppression of Appellant's initial statements to police. Therefore, we conclude that Appellant has failed to satisfy the third prong of the *Pierce* test and thus is unable to prove ineffectiveness of counsel in regard to this claim.[12] *See Albrecht,* 720 A.2d at 701.

■ In his third claim of counsel ineffectiveness, as alluded to previously, Appellant argues that counsel was ineffective for failing to litigate a motion to suppress Appellant's statements to a caseworker employed by Schuylkill County CYS. The caseworker interviewed Appellant shortly after his arrest, concerning his children, who were in foster care as the result of his incarceration. At that meeting, the caseworker commented that she could not understand how the murders took place. Appellant freely admitted to killing Uncle, and stated that he had done so because of Uncle's greed. Appellant also admitted to killing Grandmother. He also stated that although he had been drinking at the time of the murders, he was not intoxicated. The caseworker testified to these confessions at both the degree of guilt hearing and during the penalty phase.

Appellant argues that the caseworker, as an employee of the Commonwealth, gained access to Appellant because of her

11. While Appellant also seeks to attack the confession to the CYS caseworker, his argument thereon is unavailing, as will be discussed *infra.*

12. Although we need not address the second prong, we note that the PCRA court found credible trial counsel's testimony that Appellant specifically directed him not to pursue the suppression issue and to plead guilty generally to two counts of murder. We agree with the PCRA court that counsel had a reasonable basis in following his client's instructions. Therefore, Appellant's claim also fails to satisfy the second prong.

employment and therefore, had a duty to advise Appellant of his *Miranda* warnings citing to *Commonwealth v. Ramos,* 367 Pa.Super. 84, 532 A.2d 465 (1987). In *Ramos,* a CYS caseworker testified to a confession provided by the defendant during the caseworker's interview of the defendant while he was in prison awaiting trial on criminal charges. *Id.* The court in *Ramos* found that the inculpatory statements were inadmissible because the caseworker did not administer *Miranda* warnings. *Id.* However, in that case, the CYS caseworker was investigating charges relating to the sexual abuse of a child for which Ramos was awaiting trial. *Id.* Thus, the caseworker there was very much analogous to a police officer investigating a crime.

█ This case is wholly distinguishable. Here, the CYS caseworker was concerned with the plight of Appellant's children. She was a stranger to any aspect of the criminal case. Her question regarding the murders was purely conversational and was not made with the purpose of soliciting information from Appellant about the crimes. If taken to its logical conclusion, Appellant's argument, in essence, is that any governmental employee would be required to provide *Miranda* rights before engaging in conversation. Assuming one was in jail, this would include maintenance staff cleaning the facility, cooks preparing food and volunteers offering solace. However, our Court, in *Ramos,* did not enunciate such a broad rule and such a broad interpretation is not warranted here. As noted, this case is inapposite of *Ramos,* and, under its facts, there is no arguable merit to Appellant's contention. Accordingly, he has not met the first prong of *Pierce.* Therefore, we need not analyze the remaining two prongs because counsel cannot be ineffective for failing to raise a meritless claim. *See Commonwealth v. Bryant,* 855 A.2d 726, 742 (Pa.2004).

█ Appellant's fourth claim of trial counsel's ineffectiveness concerns the testimony of co-defendant Miles during both the degree of guilt and penalty phase hearings. During such testimony, Miles admitted to having a large sum of cash on his person following the murders. During cross-examination, Ap-

pellant's trial counsel inquired as to the source of such cash apparently to raise the inference that Miles committed the thefts at the crime scene. Miles responded by invoking his Fifth Amendment right against self-incrimination concerning the source of the money.[13] Appellant argues that trial counsel was ineffective for failing to object to Miles' invocation of the Fifth Amendment during cross-examination and for not filing a motion to strike his direct examination testimony.

The standard against which a trial judge must determine whether a witness may properly invoke a claimed Fifth Amendment privilege was set forth in *Commonwealth v. Carrera*, 424 Pa. 551, 227 A.2d 627 (1967):

When [a witness is called to testify], he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be perfectly clear from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answer demanded cannot possibly have such tendency.

*Id.*, at 629 (emphasis and citations omitted.). Furthermore, if an individual possesses reasonable cause to apprehend danger of prosecution, "it is not necessary that a real danger of prosecution exist to justify the exercise of the privilege against self-incrimination." *Id.* "Moreover, the privilege extends not only to the disclosure of facts which would in themselves establish guilt, but also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established." *Id.; see Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). To require the witness to prove the basis of the claim would force the disclosure of the information against which the Fifth Amend-

13. At the PCRA hearing in 2003, Miles again testified and stated that the money came from a different theft and that he would have testified to that effect in 1994 had the court so required.

ment was designed to protect. *See Hoffman*, 341 U.S. at 486, 71 S.Ct. 814.

Notwithstanding Appellant's contentions, Miles clearly had every right to invoke his Fifth Amendment privilege against incriminating himself in a different criminal enterprise, and availing himself of that right provided no basis for a motion to strike. Appellant fails to cite any legal authority that states that counsel could move to strike merely because Miles invoked his Fifth Amendment right on cross-examination. As such, this assertion lacks arguable merit and fails the first prong articulated in *Pierce*. *See Bryant*, 855 A.2d at 742.

 Appellant next argues that trial counsel was ineffective for failing to investigate Appellant's background for potential mitigation evidence during the penalty phase. Specifically, Appellant claims counsel should have presented evidence regarding the fact that he had an abusive father, a dysfunctional family life, and a history of childhood mental problems.

In pursuit of mitigating evidence, counsel spoke with Appellant at length and also interviewed Appellant's mother and girlfriend seeking information. Eventually counsel called six mitigation witnesses, including the girlfriend, another friend, a neighbor, the psychiatrist who conducted the competency evaluation, Appellant's principal prison supervisor, and the deputy who transferred Appellant from prison to the courtroom in an effort to mitigate his conduct. Appellant's counsel introduced evidence of his general positive character, his alcohol consumption on the night of the murders and his remorsefulness of the crime.

During the hearing before the PCRA court, counsel testified that neither Appellant, his mother nor his girlfriend provided him with any information that went unused at the penalty phase hearing. Furthermore, according to counsel, no one informed him of Appellant's abusive upbringing, **dysfunctional** family or any childhood mental illness. To the contrary, counsel testified that had he been informed of this information, he would have used it in mitigation.

Appellant cites to the concurrence by Madame Justice Newman in *Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221, 1234 (1996), for the proposition that failure to conduct an adequate investigation of witnesses and/or records may constitute ineffective assistance of counsel. *See also Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (holding that counsel's failure to investigate further was unreasonable, given that counsel had "acquired only rudimentary knowledge of [the defendant's] history from a narrow set of sources, and that what counsel actually discovered" suggested that further mitigating evidence might exist).

 The Commonwealth rejoins that in order for counsel's assistance to be found constitutionally infirm, **counsel's** representation must have fallen below an objective standard of reasonableness and there must be a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of a counsel's performance must be highly deferential" and "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct from counsel's perspective *at the time.*" *Id.* at 689, 104 S.Ct. 2052 (emphasis added).

 Appellant's argument fails pursuant to the *Pierce* test both because it lacks arguable merit and because counsel's actions were strategically reasonable given the information he had available to him. Applying the objective standard enunciated in *Strickland*, we find no ineffectiveness on trial counsel's behalf. He interviewed Appellant, his mother and his girlfriend. He sought out relevant information from Appellant's family and we do not perceive that he should have done more in this regard. The second prong of *Pierce* is satisfied if counsel's strategic decision was premised upon all of the information he had available to him. An evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the

distorting effects of hindsight. *See Commonwealth v. Base-more,* 560 Pa. 258, 744 A.2d 717, 735, (2000) citing, *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.[14]

Appellant next contends that his trial counsel's ineffectiveness deprived him of his right to an independent mental health expert to evaluate his mental condition and assist in development of a diminished capacity defense and testify as to mitigating circumstances during the penalty phase. This issue is merely a restatement of Appellant's initial contention of ineffectiveness of trial counsel for failing to obtain prior school, mental health and hospital records. The only distinction between the arguments is that the initial one was phrased in terms of a failure to obtain the records, and the instant one is framed in terms of failure to obtain an independent expert to evaluate and comment on those records. We find it unnecessary to evaluate this argument again, and instead hold that if fails because, for all the reasons set forth *supra,* even assuming *arguendo* the records would have been obtained and an independent psychiatrist retained, the end result of this case would have been no different.

Appellant's seventh claim of ineffective assistance of counsel is that the trial court erred in failing to instruct the

14. The dissenting opinion authored by Mr. Justice Saylor claims the majority "elects to supplant the factfinder's decision" when concluding that there was no arguable merit to the claim that counsel was ineffective for failing to seek family background and mental and school records to support mitigation. Saylor, J., dissenting, Slip Op. at 2. In fact, the PCRA court rejected this ineffectiveness of counsel claim based upon the prejudice prong of *Pierce.* Therefore, the PCRA court's analysis of the arguable merit and reasonable basis prongs was cursory and conclusory. Moreover, to the extent that the dissent asserts that the determination of arguable merit is a factual conclusion, we disagree. While we will always defer to a PCRA court's factual determinations where supported by the record, the ultimate question of whether facts rise to the level of arguable merit is a legal determination.

As stated previously, *at the time* of the penalty hearing, counsel was not privy to Appellant's background information as cited by the dissent because Appellant and his family failed to provide counsel with such information, which is a specific requirement of *Strickland.* Again, as can be derived by the U.S. Supreme Court decision in *Basemore,* this Court must be careful not to hold counsel responsible for information which became available in hindsight.

jury on the mitigating circumstance of extreme mental or emotional disturbance and counsel failed to object to or request an appropriate jury instruction.[15] Appellant relies upon 42 Pa.C.S. § 9711(c)(1)(ii) which states that "the court shall instruct the jury on ... the mitigating circumstances specified in subsection (e) as to which there is some evidence." *Id.* Where there is some evidence to support one of the statutory mitigators, the court must instruct the jury on that circumstance. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, 704 (1984).

The Commonwealth argues that there was no evidence presented at the trial, that at the time of the murders, Appellant was suffering from extreme mental or emotional disturbance. The Commonwealth contends that the only evidence presented was that Appellant was under the influence of alcohol. Additionally, the Commonwealth argues that the jury was not precluded from considering the evidence as a mitigating factor pursuant to the catchall provision of 42 Pa.C.S. § 9711(e)(8). We agree.

▬▬ Where there is no evidence to support a mitigating circumstance, it may not be found. *See Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991). Appellant was examined for competency by a psychiatrist at the time of trial. At no point did the psychiatrist testify that Appellant was extremely mentally or emotionally disturbed when he committed these murders. While Appellant certainly had a history of mental health difficulties and alcoholism, and was most probably under the influence of alcohol when these murders occurred, these concerns are distinct from "extreme mental or emotional disturbance." [16] In accordance with the first prong of

**15.** 42 Pa.C.S. § 9711(e)(2) states:

 (e) Mitigating circumstances shall include the following:

 \* \* \* \* \* \*

 (2) The defendant was under the influence of extreme mental or emotional disturbance.

**16.** We note that after an exhaustive search, there appears to be no case or statute that specifically defines the term "extreme mental or emotional disturbance." Regardless, in the case *sub judice,* there was no

*Pierce,* therefore, we find that there is no arguable merit to this claim. *See Bryant,* 855 A.2d at 742.

In his eighth claim of ineffectiveness, Appellant argues that trial counsel was ineffective for failing to object to the jury instruction during the penalty phase with regard to the aggravating circumstance that the killing was committed in the perpetration of a felony, because the trial court failed to define the elements of the alleged felonies. The Commonwealth argued that Appellant committed a killing while in the perpetration of a felony, as an aggravating circumstance. *See* 42 Pa.C.S. § 9711(d)(6). The trial court instructed the jury, "The defendant committed a killing while in the perpetration of a felony. A felony in Pennsylvania is such a crime as robbery, burglary or conspiracy." N.T. 9/15/94 at 169. Appellant maintains that the trial court failed to define the elements of these crimes for the jury. In support of his argument, Appellant cites *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835, 845 (1989), for the proposition that when the Commonwealth proceeds on the (d)(6) aggravator, the court is required to define the elements of the alleged felonies. Appellant also makes reference to *Commonwealth v. May,* 540 Pa. 237, 656 A.2d 1335 (1995), where this Court cited *Billa* with approval.

However, Appellant's argument is misguided. The PCRA court correctly found that *May* and *Billa* are distinguishable from the case *sub judice.* In this case, the PCRA court noted that Appellant was already found guilty of the underlying felonies relied upon by the Commonwealth following a non-jury trial on those charges prior to the penalty hearing. In neither *May* nor *Billa,* had the accused already been found guilty. To the contrary, the jury charge at issue in these cases related to the guilt phase of trial. In this case, the records of the guilty verdicts were entered into evidence during the penalty phase. The PCRA court found that "to

psychiatric testimony that Appellant suffered from psychiatric deficiencies. The only testimony presented related to Appellant's intoxication on the night in question. Therefore, we need not reach the definition of "extreme mental or emotional disturbance" here.

argue that the court was required to instruct the jury on the elements of those charges during the penalty phase is preposterous." PCRA Ct. Op. at 20. We agree that this claim is completely devoid of merit.

■ Appellant, in his ninth claim of ineffectiveness, argues that trial counsel was ineffective for failing to object to the trial court's instructions during the penalty phase that aggravating and mitigating circumstances are "things that make a first degree murder case more or less terrible." Appellant argues that the court's instruction improperly restricted the jury's consideration of mitigating evidence. The PCRA court found that this precise issue was raised, nearly verbatim, on direct appeal to this Court and no error was found. *See Saranchak I*, 544 Pa. 158, 675 A.2d 268, 277 (1996). Therefore, the PCRA court dismissed the claim as previously litigated.

The applicable statutory provision is 42 Pa.C.S. § 9544(a)(2) which provides as follows:

(a) Previous litigation.—For purposes of this subchapter, an issue has been previously litigated if:

\* \* \* \* \* \*

(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue.

Accordingly, as this claim was litigated on direct appeal it is not cognizable under the PCRA.

■ In his tenth claim of ineffective assistance of counsel, Appellant alleges that counsel was ineffective for failing to object to an "improper argument" made by the prosecution during the penalty phase. Specifically, Appellant contends that the prosecutor, in his opening statement, told the jury that they would hear from Miles, co-defendant, who would testify to the same statements that he made to police following the murders. By doing so, Appellant argues that the prosecution bolstered the credibility of a key witness by referring to a prior consistent statement which was not admitted into evidence. Furthermore, Appellant maintains that the prosecutor

intended to inflame the passions of the jury by telling the jury that Miles would testify that prior to being shot, Appellant's grandmother said, "Danny, why do you have that gun?" Appellant contends it was error for counsel not to object because neither Miles, in any of his prior testimony or statements, nor any other witness, had ever attributed those words to Grandmother. Finally, Appellant argues that the prosecutor incorrectly told the jury that Miles' testimony that he and Appellant had gone to the Residence to commit robbery would be corroborated by Appellants statements to police. Appellant argues that he always denied the robbery charges. Appellant's argument is that the cumulative effect of the prosecutor's improper remarks violated his rights under the Sixth, Eighth and Fourteen Amendments of the United States Constitution.

The PCRA court found that Appellant did not properly specify how his rights were violated. The court found that the remarks were not inflammatory, did not prejudice Appellant, and the claim was without arguable merit. We agree. We conclude that Appellant fails to establish arguable merit because the cited statements by the prosecutor would not have the "unavoidable effect" of forming in the jury's mind a "fixed bias and hostility" such that the jury could not "weigh the evidence objectively and render a true verdict" as is required to establish reversible error. *See Commonwealth v. Fisher,* 572 Pa. 105, 813 A.2d 761, 768 (2002). The jury was well-aware of the fact that Appellant had been convicted of two counts of murder in the first degree and the other charges and of the details of the crimes. In light of the other evidence in the case, we conclude that the prosecutor's argument did not have the unavoidable effect of prejudicing the jury. Therefore, Appellant's ineffectiveness claim must fail because he has failed to establish the merit of the underlying claim. *See Bryant,* 855 A.2d at 742.

Finally, in his last claim, Appellant argues that that he is entitled to relief due to the cumulative effect of the ineffective assistance of counsel errors alleged. Having determined, however, that no individual claim has merit, Appellant is not

entitled to relief based upon their alleged cumulative effect. *See Rollins,* 558 Pa. 532, 738 A.2d 435, 452 (1999).

Accordingly, the order of the PCRA court is affirmed.[17]

Justice SAYLOR files a concurring and dissenting opinion.

Justice NIGRO files a dissenting opinion.

·SAYLOR, Justice, concurring and dissenting.

While I agree with the majority's decision not to award a new degree-of-guilt hearing, I respectfully differ with its reasoning and outcome concerning the claim of trial counsel's ineffectiveness for failing to investigate and present mitigation evidence at the penalty hearing pertaining to Appellant's life history and mental condition.

At the outset of its analysis of this claim, the majority finds it lacking in arguable merit, at least with regard to the life-history aspect. *See* Majority Opinion, *op.* at 509–11, 866 A.2d at 304. The majority, however, fails to address the PCRA court's contrary conclusion, as follows:

> [B]ased upon the information [trial counsel] did receive [from a psychiatrist's report], he should have performed a more thorough investigation into possible mitigating circum-stances. A more complete investigation would have re-vealed information that should have been presented to the jury. For that reason, we find arguable merit to [Appel-lant's] claim, and we have found no reasonable basis for [trial counsel's] failure to conduct a more thorough investi-gation.

*Commonwealth v. Saranchak,* No. 889, 889A–1993, *slip op.* at 16 (C.P. Schuylkill July 8, 2003).

Although the majority thus elects to supplant the factfin-der's decision on this point, it offers modest support for its decision in this regard, stating only, in general terms, that trial counsel sought out relevant information from Appellant's

17. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor of Pennsylvania in accordance with 42 Pa.C.S. § 9711(i).

mother and girlfriend. *See* Majority Opinion, *slip op.* at 16.
The record, however, gives very little indication concerning
the depth of the investigation in this regard. *See, e.g.,* N.T.,
Feb. 11, 2003, at 86–87 (post-conviction testimony of trial
counsel to the effect that "I remember talking to [Appellant's
mother]. Now exactly what we spoke about, I cannot recall.");
*id.* at 88 (testimony, with respect to trial counsel's conversa-
tion with Appellant's girlfriend, that "I don't recall what I
spoke to her about."). Moreover, in its independent finding of
no arguable merit, the majority makes no attempt to reconcile
counsel's failure to obtain school records reflecting Appellant's
placement in a special educational program for socially and
emotionally disturbed children, *see* N.T., Feb. 11, 2003, at 89 &
Ex. P–18, Appellant's "obvious and apparent" status as a
"seriously disturbed adolescent," *id.* at 42, or counsel's failure
to interview various family members and others who were
aware of Appellant's history of psychiatric evaluation and
treatment and developmental difficulties, as reflected in their
post-conviction testimony to the effect that they simply were
not contacted by counsel. *See, e.g.,* N.T., Feb. 19, 2003, at 65–
66 & Exs. D–6, D–7 (stipulated affidavits from two of Appel-
lant's teachers); *id.* at 135 (testimony of Appellant's step
father); *id.* at 151 (testimony of Appellant's half-brother). In
relation to the mental health aspect of this claim, the deficient
character of counsel's investigation and preparation is also
reflected in his failure to obtain medical records detailing
Appellant's past psychiatric hospitalizations, *see* N.T., Feb. 11,
2003, at 88 & Ex. P–18, and his acknowledged failure to
expand the scope of the retention of a defense psychiatrist
past a competency evaluation based on a brief clinical observa-
tion and into a fuller, mitigation-based assessment. *See* N.T.,
Feb. 11, 2003, at 75 & Ex. P–10.

In my view, the PCRA court's arguable merit determination
as concerns counsel's deficient stewardship in investigating
and presenting mitigation evidence is amply supported in the
record and should not be disturbed by this Court.

I recognize that the determination concerning prejudice is a
closer question in this case. In this regard, as the majority

notes, at the penalty hearing trial counsel developed several lines of mitigation, including generalized references to Appellant's alcohol-related difficulties, *see* N.T., Sept. 15, 1994, at 94–95, 99–101, 107; positive adjustment to incarceration, *see id.* at 101; character and disposition when not subject to the influence of alcohol, *see* N.T., at 99–100; and positive role as a father of two children. *See id.* at 100. Nevertheless, I believe that the mitigation evidence that was omitted by virtue of counsel's deficient conduct had greater potential significance in terms of the jurors' decision whether to return a life sentence or a death verdict than that which has been attributed to it by the majority and by the PCRA court.

In particular, during the penalty hearing, the only mental health evidence that counsel presented was the testimony of Dr. Stefan Kruszewski, a psychiatrist who had been retained under court order solely to determine whether Appellant was competent to stand trial and whether his confession to the police was voluntary. *See* N.T., Feb. 11, 2003, at 164 & Ex. P–10. Significantly, his penalty-hearing testimony was very narrowly focused along the lines of his retention, consisting primarily of an indication that, during the limited competency assessment, Appellant expressed remorse about the murders and took responsibility for his actions, but did not manifest any major psychiatric disability. *See* N.T., Sept. 15, 1994, at 164. Dr. Kruszewski also stated, in general terms, that if a person tends to be impulsive by nature, consuming alcohol can make that person more impulsive and can potentially lead to his committing a crime without being fully aware of what he was doing, *see id.* at 123; however, the witness did not connect this reasoning with anything that occurred in the present case. Nor was Dr. Kruszewski, or any other mental health expert, asked to perform a more comprehensive evaluation subsuming a review of available records from the hospitals in which Appellant was treated for psychiatric problems connected with multiple psychotic episodes (including at least one suicide attempt), or from Appellant's school, where, again, he had been placed in a special program for students with social and emotional disturbances.

By contrast, Appellant's PCRA counsel presented the testimony of a licensed clinical psychologist, Harry Kropp, PhD, who did review these documents and did conduct a fuller clinical, mitigation-based assessment of Appellant. Dr. Kropp concluded, based upon such information, that as a child Appellant suffered from pervasive developmental disorder. *See* N.T., Feb. 11, 2004, at 17. He also noted that there was alcoholism and domestic violence in Appellant's childhood home, and Appellant had been chemically dependent since the age of twelve or thirteen. *See id.* at 19–21. Further, when in grammar school, Appellant suffered from several additional psychological infirmities which, combined with his substance abuse, resulted in paranoid and delusional traits which became exacerbated by alcohol consumption. *See id.* at 13–14, 21, 39, 42. Dr. Kropp indicated that these conditions constituted significant impairments to normal functioning, and led to a condition in which Appellant—who apparently had wanted to join the military from an early age—would occasionally think that he in fact was in the military, and these delusions would become particularly strong when he consumed alcohol. *See* N.T. Feb. 11, 2003 at 27–28. Dr. Kropp described Appellant as having a serious mental illness, *id.* at 30, and noted that Appellant never received necessary psychiatric treatment, in part because of a virtual lack of any family support system that would assure that treatment was sought.

Likewise, after also conducting a fuller mitigation-based assessment, Dr. Kruszewski testified at the post-conviction hearing that Appellant had a psychoactive, substance-induced delusional disorder at the time of the killings. *See* N.T. Feb. 19, 2003, at 182. Although the PCRA court disbelieved a discrete portion of Dr. Kruszewski's testimony concerning Appellant's capacity to form criminal intent, it did apparently accept Dr. Kruszewski's conclusion (consistent with that of Dr. Kropp) that Appellant was suffering from a serious mental disorder at the time of the killings. *See Saranchak,* No. 889, 889A–1993, *slip op.* at 15, 17. Indeed, the PCRA judge—who, as the majority notes, was the same as the trial judge—expressly found, in light of the availability of the pertinent

records at the time of trial, that counsel's performance in this area fell below an objective standard of reasonableness, and that the mental health evidence which should have been presented would have at least supported the (e)(8), or "catch-all," mitigating circumstance. *See* 42 Pa.C.S. § 9711(e)(8) ("Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."). The PCRA court ultimately denied relief only because it felt that, even if this mitigating factor had been proved, there was no reasonable probability that the jury would have returned a sentence of life imprisonment rather than death.

It is evident from the trial record, however, that, had this information been elicited during the penalty hearing, the court also would have instructed the jury as to the mitigating circumstance pertaining to the influence of an extreme mental or emotional disturbance. *See* 42 Pa.C.S. § 9711(e)(2). The reason is that counsel specifically requested this instruction, and the trial court denied the request on the sole basis that there was no expert testimony to support it. *See* N.T. Sept. 15, 1994, at 132.[1] Had the instruction been given, it is certainly plausible—and, in my opinion, reasonably likely—that at least one juror would have found the (e)(2) mitigator,[2] based upon a combination of the undiscovered expert evidence and certain lay testimony that was presented at the penalty hearing concerning Appellant's consumption of alcohol and

---

[1]. To the extent the majority opinion may be understood to affirm the trial court's view that the (e)(2) mitigating factor requires expert evidence, *see* Majority Opinion, *op.* at 512–13 n.16, 866 A.2d at 306 n.16, I am not in agreement, as there is nothing in the capital sentencing statute that suggests such a limitation. *See* 42 Pa.C.S. § 9711(c)(1)(ii) (providing that the court "shall" instruct the jury concerning any statutory mitigating circumstance for which there is "some" evidence); *Commonwealth v. Carpenter*, 511 Pa. 429, 444, 515 A.2d 531, 538 (1986) (noting that lay testimony may support the (e)(2) mitigator).

[2]. Penalty-phase prejudice occurs whenever there is a reasonable probability that even a single juror would have concluded that the mitigating circumstance existed and that, together with any other mitigation, it outweighed (or was of equal weight with) the aggravating circumstances. *See* 42 Pa.C.S. § 9711(c)(1)(iv); *see also Wiggins v. Smith*, 539 U.S. 510, 537, 123 S.Ct. 2527, 2543, 156 L.Ed.2d 471 (2003).

highly unusual behavior around and after the time of the killings.[3] Given the weight to the mitigation case added by the evidence that was foregone by virtue of counsel's deficient stewardship, I also believe that there is a reasonable likelihood that these mitigating factors would have convinced at least one juror to favor a life sentence over death.

As such, counsel's failure to undertake the required investigation and to present reasonably available mitigation evidence undermines my confidence in the reliability of the death verdict, and I would award a new sentencing hearing.

NIGRO, Justice, dissenting.

I respectfully dissent, as I disagree with the majority's conclusion that Appellant is not entitled to relief on his claim that trial counsel was ineffective for failing to provide the court-appointed psychiatrist, Dr. Stefan Kruszewski, with Appellant's relevant mental health and school records and for otherwise failing to adequately investigate and prepare a diminished capacity defense.

Notably, the majority agrees with Appellant that his claim in this regard has arguable merit and that trial counsel had no reasonable basis for failing to provide Dr. Kruszewski with the relevant records. Moreover, I note that such a conclusion is clearly supported by the record, which includes Dr. Kruszewski's testimony at the PCRA hearing that had he been provided with Appellant's records at the time of trial he would have concluded that Appellant was incapable of forming the specific intent to kill at the time of the murder, *see* N.T., 2/19/2003, at

---

3. For example, one of the Commonwealth witnesses at the penalty hearing stated that Appellant confessed to her that he had "snapped" on the night in question, and there was evidence from other witnesses consistent with this observation, including testimony that Appellant had been drinking heavily, he was dazed and glassy-eyed, his manner had become subdued (which was in contrast with his usual demeanor after consuming alcohol), and he had spoken to his father's gravestone earlier in the evening. Furthermore, when interviewed by police the next evening, Appellant seemed to think that the killings were accomplished as part of a military operation, and his responses were accordingly rigid and militaristic. The officers indicated that Appellant's demeanor was unusual as well, as he appeared to believe that he was a new recruit and the officers were his drill sergeants.

173–183,[1] as well as trial counsel's admission that he had no reason for failing to investigate the extent of Appellant's mental health problems or for failing to provide Dr. Kruszewski with Appellant's school and hospital records. *See* N.T., 2/11/03, at 89–91.

However, the majority then determines that Appellant was not prejudiced by counsel's inactions here. In reaching that conclusion, the majority chiefly relies upon *Commonwealth v. Stevens*, 559 Pa. 171, 739 A.2d 507 (1999), where trial counsel, like counsel here, failed to provide the appellant's evaluating psychiatrist with the necessary background documents, resulting in the psychiatrist's conclusion that the appellant did not qualify for a diminished capacity defense. However, after being provided with the appellant's mental health records, the same psychologist testified at the appellant's PCRA hearing that, had she seen the appellant's background documents at the time of trial, she would have been able to offer expert testimony in support of a diminished capacity defense. *Id.* at 514. Despite this testimony, a majority of this Court concluded on appeal that the appellant had not been prejudiced by counsel's failure to provide the psychiatrist with the appellant's mental health records. In support of its conclusion, the majority relied on the PCRA court's statement that, as the trier of fact at the appellant's trial, the court would not have accepted a diminished capacity defense in light of the other evidence presented by the Commonwealth that had, in the court's view, definitively established the appellant's specific intent to kill. *Id.* at 515.

Here, the majority relies on *Stevens* in determining that Appellant was not prejudiced by counsel's failure to provide Dr. Kruszewski with Appellant's mental health records because the PCRA court below, like the PCRA court in *Stevens*, essentially stated that, based on the actions and statements of Appellant at the time of the murder, it still would have found

1. At his PCRA hearing, Appellant also presented the testimony of clinical psychologist Harry D. Kropp to corroborate Dr. Kruszewski's expert opinion with regard to Appellant's diminished capacity at the time of the offenses. *See* N.T., 2/11/03, at 11–41.

that Appellant had the specific intent to kill *regardless* of any testimony by Dr. Kruszewski that Appellant was unable to formulate such an intent or any other additional evidence of Appellant's diminished capacity. I am as troubled by this reasoning as I was in *Stevens*. In *Stevens*, I also filed a dissenting opinion, which essentially expressed agreement with the dissent filed by Justice Zappala. There, Justice Zappala stated:

> The PCRA court determined that Appellant suffered no prejudice by his counsel's failure to pursue [a diminished capacity] defense. It held that it would have found that Appellant had, and exhibited, the specific intent to kill despite [the psychiatrist's] revised diagnosis as presented at the PCRA hearing. I believe that the PCRA court as well as the majority fails to consider the full effect of counsel's error in failing to provide the documents needed to correctly diagnose Appellant. Rather, their consideration is limited to whether [the psychiatrist's] testimony during the PCRA hearing would have been sufficient to establish reasonable doubt when set against the evidence offered by the Commonwealth at trial. This may have indeed been the proper analysis had Appellant presented [the psychiatrist's] revised diagnosis as after-discovered evidence. However, the [psychiatrist's] revised diagnosis, set against her testimony at trial, is offered to show counsel's ineffectiveness in failing to pursue a vigorous and viable defense. Counsel's failures precluded not only [the psychiatrist's] correct testimony at trial, but also any other evidence, which was not discovered due to counsel's failure. **Since it is impossible for the trier of fact to fully anticipate and properly weigh a defense that was [not] . . . presented, it is impossible for the PCRA court to state that Appellant was not prejudiced by such failure.**

*Id.* at 531 (Zappala, J., dissenting) (emphasis added).

This reasoning is equally applicable here. Accordingly, in this case, as in *Stevens*, I would remand to the PCRA court for reconsideration of Appellant's claim that counsel was ineffective for failing to provide Dr. Kruszewski with Appellant's

mental health and school records and for otherwise failing to adequately investigate and present a diminished capacity defense at his degree of guilt hearing.