J-S39004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID CREWS | |
| Appellant | No. 1725 MDA 2015 |

Appeal from the PCRA Order Dated May 21, 2015
In the Court of Common Pleas of Luzerne County
Civil Division at No: CP-40-CR-0003228-2010

BEFORE:  STABILE, PLATT [*], and STRASSBURGER[*], JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 11, 2016**

Appellant David Crews appeals from the May 21, 2015 order of the Court of Common Pleas of Luzerne County ("PCRA court"), denying his petition for collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.   PCRA counsel has filed a no-merit brief and petitioned to withdraw under **Turner**/**Finley**.[1]  Upon review, we affirm and grant the petition to withdraw.

The facts and procedural history of this case are undisputed.  As summarized by a prior panel of this Court in Appellant's direct appeal:

Appellant was serving a sentence on an unrelated matter at the State Correctional Institution at Dallas.  On October 14,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

2009, appellant was involved in an incident with another inmate in the showers. Appellant, who was aware that he had tested positive for the HIV virus, threw fecal matter at five prison guards; some of the guards were actually hit in the face and mouth. Appellant also later threatened another guard by averring he would throw feces at him. On September 7, 2010, Appellant was charged with five counts of aggravated assault, 18 Pa.C.S.A. § 2702(a)(2); five counts of assault by prisoner, 18 Pa.C.S.A. § 2703(a); five counts of simple assault, 18 Pa.C.S.A. § 2701(a)(3); five counts of recklessly endangering another person, 18 Pa.C.S.A. § 2705; and one count of terroristic threats with intent to terrorize another, 18 Pa.C.S.A. § 2706(a)(1).

On October 18, 2011, Appellant entered an open guilty plea to five counts of assault by prisoner and one count of terroristic threats with intent to terrorize another. Following the plea, Appellant was immediately sentenced to an aggregate term of 6 to 12 years' incarceration consecutive to the sentence he was currently serving. Thereafter, Appellant accused counsel of misrepresenting the Commonwealth's plea offer concerning the statutory consecutive sentence. Appellant requested substitute conflict counsel and presented an oral motion to withdraw his guilty plea. The trial court denied his request for new counsel but granted his motion to withdraw his guilty plea.

A jury trial commenced on October 18, 2011 and Appellant was convicted of the same charges to which he pled guilty. At the end of the trial, Appellant acted out and the trial court found him to be in contempt. On November 29, 2011, appellant was sentenced to an aggregate term of 10 to 20 years' incarceration consecutive to the sentence Appellant was previously serving; thus, the court imposed an increased sentence. Furthermore, Appellant was sentenced to an additional six months consecutive to all other sentences on the contempt count.

*Commonwealth v. Crews*, No. 614 MDA 2012, unpublished memorandum at 1-3 (Pa. Super. filed January 31, 2013). We affirmed Appellant's judgment of sentence. Our affirmance was upheld by our Supreme Court. *Commonwealth v. Crews*, 70 A.3d 809 (Pa. 2013).

On July 30, 2013, Appellant *pro se* filed a PCRA petition, raising a plethora of ineffective assistance of counsel claims. PCRA court appointed counsel, who filed an amended PCRA petition. PCRA court held a hearing on May 21, 2015, following which it denied Appellant relief. Appellant timely

appealed to this Court. In his Pa.R.A.P. 1925(b) statement of errors complained of on appeal, Appellant raised five assertions of error:

1. [T]rial counsel was ineffective in failing to obtain video footage near where the incident occurred, video footage that the Commonwealth possessed.

2. Trial counsel was ineffective in failing to properly use inconsistent statements of witnesses that would be inconsistent with their statements in the Affidavit of Probable Cause.

3. Trial counsel was ineffective in failing to object to two jurors who knew corrections officer and victim, Joe Wilds.

4. Trial counsel was ineffective on appeal for failing to properly challenge the underlying conviction.

5. Trial counsel was ineffective in failing to challenge the Pre-Sentence Investigation which was incorrect and listed it in [sic] improper conviction that increased the prior record score.

Rule 1925(b) Statement, 7/14/15. In response, the PCRA court issued a Pa.R.A.P. 1925(a) opinion, concluding that, based on the testimony presented at the PCRA hearing, Appellant's first and third assertions of error lacked a factual predicate. Resolving any conflicts in testimony against Appellant, the PCRA court determined that there was no evidence that a video footage of the fecal flinging incident existed or that counsel was aware that some jurors knew the corrections officer. With respect to Appellant's second assertion of error, the PCRA court concluded that he failed to identify any inconsistent statements by the Commonwealth's witnesses. Addressing Appellant's fourth assertion of error, the PCRA concluded that Appellant would not have been able to demonstrate prejudice because sufficient

evidence of record supported his convictions for assault.[2]  Finally, the PCRA court determined that Appellant's PSI-related claim lacked merit.[3]

On February 17, 2016, Appellant's PCRA counsel filed in this Court an application to withdraw as counsel and filed a no-merit letter, wherein counsel repeats the same assertions of error raised in Appellant's Rule 1925(b) statement.  ***Turner/Finley*** Brief at 1.

Before we may consider this issues, we must address whether PCRA counsel has met the requirements of ***Turner/Finley***.  For PCRA counsel to withdraw under ***Turner/Finley*** in this Court:

> (1)  PCRA counsel must file a no-merit letter that details the nature and extent of counsel's review of the record; lists the appellate issues; and explains why those issues are meritless.
>
> (2)  PCRA counsel must file an application to withdraw; serve the PCRA petitioner with the application and the no-merit letter; and advise the petitioner that if the Court grants the motion to withdraw, the petitioner can proceed *pro se* or hire his own lawyer.
>
> (3)  This Court must independently review the record and agree that the appeal is meritless.

---

[2]  Similarly, the record would not have supported any argument that Appellant's verdict was against the weight of the evidence.

[3]  Our review of the record reveals that the calculation of Appellant's prior record score was proper and that Appellant acquiesced to the same.  Even if the prior record score had included an incorrect conviction, the inclusion or exclusion of such conviction would not have had an impact on Appellant's classification as a repeat felony offender (RFEL).  ***See*** 204 Pa.Code §§ 303.4(a)(2), 303.16(a).

*See Commonwealth v. Widgins*, 29 A.3d 816, 817-18 (Pa. Super. 2011) (citing or quoting *Turner*, *Finley*, *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), and *Commonwealth v. Friend*, 896 A.2d 607 (Pa. Super. 2008), *overruled in part by*, *Pitts*).

We find that PCRA counsel has complied with *Turner*/*Finley*. PCRA counsel has petitioned for leave to withdraw and filed a *Turner*/*Finley* no-merit letter. Finally, PCRA counsel informed Appellant of his right to hire a new lawyer or file a *pro se* response.[4]

We now turn to this appeal to determine whether it is indeed meritless. "On appeal from the denial of PCRA relief, our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record and free of legal error." *Widgins*, 29 A.3d at 819.

After careful review of the record on appeal, and the relevant case law, we conclude that the PCRA court's Rule 1925(a) opinion, authored by Judge Fred A. Pierantoni III, cogently disposes of issues raised in Appellant's Rule 1925(b) statement. *See* PCRA Court Opinion, 8/19/15, at 20-23. Moreover, PCRA counsel has complied with *Turner*/*Finley*. As stated, we have reviewed the record, and we are convinced that no meritorious appellate issues exist. We, therefore, affirm the PCRA court's May 21, 2014 order

---

[4] In his *pro se* response, Appellant appears to raise only a single ineffectiveness challenge. He argues that his trial counsel was ineffective in failing to seek disqualification of jurors who allegedly knew the victim.

denying Appellant PCRA relief. We direct that a copy of the PCRA court's August 19, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

                            :   OF LUZERNE COUTNY

V.

                            -CRIMINAL-LAW

DAVID CREWS,

                Defendant

                      : NO:   3228   OF   2010

## OPINION

## PROCEDURAL HISTORY

The procedural history in the above captioned matter is extensively set forth in both the trial court opinion of April 17, 2012 by Senior Judge Kenneth D. Brown and the Superior Court Memorandum of January 31, 2013, affirming the defendant's sentence.[1]

As observed by Superior Court, on October 14, 2009 David Crews was an inmate at the State Correctional Institute at Dallas. Defendant was aware that he had tested positive for the HIV virus and threw fecal matter at five prison guards; some of the guards were actually hit in the face and mouth. The defendant later threatened another guard by stating he would throw feces at him. Almost a year later, on September 7, 2010 the defendant

---

[1] Memorandum ( No. 614 MDA 2012) ; Ford Elliot, P.J.E., Panella And Allen, JJ.

1

was charged with five counts of aggravated assault, five counts of assault by prisoner, five counts of simple assault, five counts of recklessly endangering another person and one count of terroristic threats.

As observed by Judge Brown, the defendant was originally represented by the Public Defender's Office of Luzerne County and thereafter, on September 7, 2011, conflict counsel was appointed as stand-by counsel. Pro se pretrial motions filed by the defendant were dismissed and he thereafter entered a negotiated guilty plea. Following the guilty plea, Judge Brown immediately sentenced the defendant to an aggregate sentence of 7 to 14 years to be served consecutive to the sentence he was currently serving.

The defendant then accused conflict counsel of misrepresenting the Commonwealth's plea offer regarding the consecutive sentence and requested substitute counsel be appointed and to withdraw his guilty plea. The defendant additionally made a motion to withdraw his pro se status and requested conflict counsel represent him during trial.

Subsequent to a jury trial concluding on October 19, 2011 the defendant was found guilty of five counts of assault by a prisoner; five counts of simple assault; five counts of recklessly endangering another person and one count of terroristic threats.

2

On October 29, 2011 Judge Brown sentenced the defendant to an aggregate term of 10 to 20 years at a state correctional facility which sentence was to be served consecutive to and not concurrent with the sentence the defendant was presently serving.

The defendant filed an appeal from that determination arguing the sentence imposed violated the double jeopardy clause of both the United States and Pennsylvania Constitution and further that the court abused its discretion in sentencing in the aggravated range of the sentencing guidelines.

As previously indicated, on January 31, 2013 Superior Court issued a memorandum affirming the sentence imposed by Judge Brown. The court observed that during the course of the jury trial, the trial court gathered more information about the nature and extent of the crimes Mr. Crews committed. Further, Superior Court noted a trial court is not precluded or forbidden from extending a proper degree of leniency in return for a guilty plea.

A pro se PCRA petition was filed on July 30, 2014 and on August 6, 2014 this court appointed Jeffrey A. Yelen, Esquire as counsel for the petitioner. A supplement to the PCRA petition was filed on December 23, 2014. On that date counsel also submitted a "COMPREHENSIVE BRIEF

3

IN SUPPORT OF DEFENDANT'S PRO SE AND COUNSEL'S SUPPLEMENTAL PETITION FOR POST-CONVICTION COLLATERAL RELIEF UNDER THE POST –CONVICTION RELIEF ACT". The Commonwealth, on January 9, 2015 filed a motion to dismiss the aforementioned supplemental petition. Additionally, on January 26, 2015 the Commonwealth submitted a responsive brief.

A PCRA hearing was conducted on May 21, 2015 at the conclusion of which this court denied and dismissed the petition.

A notice of appeal was filed on April 27, 2015 and an order issued pursuant to Pa.R.A.P. 1925 (b) on June 25, 2015.

Appellate counsel submitted a concise statement, which is essentially a verbatim repetition of the purported issues set forth in the aforementioned supplement to the PCRA petition, on July 14, 2015. The Commonwealth submitted a response on July 21, 2015.

## ISSUES RAISED

The following is a verbatim iteration of the errors complained of on appeal.

4

1. Defendant alleges that trial counsel was ineffective in failing to obtain video footage near where the incident occurred, video footage that the Commonwealth possessed.

2. Trial counsel was ineffective in failing to properly use inconsistent statements of witnesses that would be inconsistent with their statements in the Affidavit of Probable Cause.

3. Trial counsel was ineffective in failing to object to two jurors who knew corrections officer and victim, Joe Wilds.

4. Trial counsel was ineffective on appeal for failing to properly challenge the underlying conviction.

5. Trial counsel was ineffective in failing to challenge the Pre-Sentence Investigation which was incorrect and listed it in improper conviction that increased the prior record score.

## HEARING SUMMARY

Robert M. Buttner, Esquire was initially called and indicated he was assigned to Mr. Crews in his then capacity as conflict counsel in Luzerne County. (May 21, 2015 N.T. 6). Attorney Buttner would serve as appellate counsel and initially discussed the matter with defendant's trial counsel, David Lampman, Esquire. (Id. N.T. 7).

In determining what issues to pursue on appeal Attorney Buttner indicated that although he considered raising other issues the one pursued was the discretionary aspect of sentence. (Id. N.T. 7).

This witness specifically stated he considered raising the issue of sufficiency of the evidence, however, when the elements of the crime were examined in the context of the testimony presented "[T]here was no way I could establish that there was insufficient evidence as to aggravated assault". (Id. N.T. 11). In further discussing the standard of review employed by the appellate court Attorney Buttner indicated that all evidence presented must be considered and any reasonable inferences drawn from the evidence inures to the benefit of the verdict winner, in the instant matter, the Commonwealth. (Id. N.T. 12).

Attorney Buttner further related discussing with trial counsel the testimony of a physician [Dr. Stanley Stanish][2] who testified regarding the defendant's participation in an HIV clinic. Attorney Buttner stated "The fact of the matter was the evidence -- if not directly, circumstantially and by way of reasonable inference, established that Mr. Crews either should have known or at least believed that he was HIV positive." (Id.N.T. 13).

---

[2] The trial testimony of Dr. Stanish appears at pages 117 through 147 of the trial transcript of October 18 and 19, 2011.

6

Attorney Buttner posited the possibility of writing about the weight of the evidence but subsequently noted it was not raised and therefore could not be pursued.[3] Attorney Buttner continued to explain why he did not pursue a sufficiency claim stating that sometimes such a claim is pursued since there is essentially nothing else to write about, but in the instant matter he declined to raise a nonmeritorious issue since he did not "want to call attention away from the issue regarding the aggravated range sentence imposed." (Id.N.T. 15, 16).

Attorney Buttner additionally indicated he examined the trial transcript in considering whether to raise a sufficiency claim including the aforementioned testimony of Dr. Stanish. (N.T. 16 through 18).

On cross examination, petitioner's counsel questioned Attorney Buttner regarding the weight of the evidence. "It's difficult to win a weight of evidence argument in the Superior Court because they hate weighing whether somebody is credible, incredible or inconsistencies. They hate overruling a jury". (Id. N.T. 22).

David Crews was called and initially questioned regarding purported "video footage" of the incident for which he was convicted. The petitioner

_____

[3] See: Pa.R.Crim. P. 607

7

indicated he believed a video tape would have been beneficial because "I think it would be useful because I noticed the testimony of the ones involved, they was changing the testimony, and the video wouldn't change. The video would have been still the same. It wouldn't change." (Id. N.T. 28). Crews additionally asserted "It would show that I didn't make no verbal gestures. They was saying that I was saying that. The camera showed that I didn't make no verbal gestures and that I didn't throw no feces at them. They were saying- - I didn't throw no feces at them. It would show that." (Id. N.T. 29).

The petitioner was next questioned regarding an assertion that two unidentified jurors were not excused or challenged for cause by trial counsel despite "their knowledge of one of the victims". (Id. N.T.32). The petitioner testified that "one juror" stated he knew one of the alleged victims and "that they used to teach their children karate lessons, give them karate lessons and stuff". (Id. N.T. 34).

The petitioner was next asked about, again unidentified, asserted inconsistent statements "made within the affidavit of probable cause and at trial" (Id. N.T. 34). The petitioner was unable to reference, with any specificity, any statements.

8

Regarding what is apparently the sufficiency issue, petitioner indicated "The facts is that besides you saying that I knew, that I had knowledge, should have known, that was neither here or there. There was neither here or there because an injured party never was even established. How was they injured? It was never established that an injury was proven". (Id. N.T. 37). Thereafter, over objection, the petitioner asserted "[T]he Commonwealth really don't have no standing on those charges because no injured party was ever proven, ever established". (Id. N.T. 38).

Finally, the petitioner was questioned concerning a prior conviction for possession of a controlled substance. The record reflects petitioner's counsel advising the court regarding a stipulation that the original presentence investigation contained a 1999 charge that was subsequently determined not to be related to Mr. Crews. Petitioner's counsel suggested the absence of this offense would have changed the petitioner's prior record score. (Id. N.T. 39, 40). Parenthetically, we observe that Maria Augello, employed by the Luzerne County Probation and Parole Department, who prepared the presentence investigation, testified during the course of this hearing. ( Id. N.T. 68 through 71). Ms. Augello's testimony established she prepared the original presentence investigation and reviewed the PSI in preparation for her testimony in the instant matter. Ms. Augello calculated

the petitioner's sentence after removing the referenced possession conviction. This did not change the petitioner's prior record score. (Id. N.T. 69). Additionally, the witness stated that "with his other convictions he reached REFEL status and felony drug convictions don't contribute to that status. It's only felony one and felony two convictions." (Id. N.T. 70).

Ms. Augello also deleted another felony two conviction which didn't change the petitioner's status as well as a burglary which was previously counted as a felony one and changed to a felony two "for the sake of argument" which still did not change the defendant's status as a RFEL.[4] (Id. N.T. 70). Indeed, at the conclusion of the hearing the court took a recess to provide petitioner's counsel additional time to examine the prior record score, after which, both counsel and the petitioner agreed that there existed no present issue concerning the presentence investigation and/or the petitioner's prior record score. (Id. N.T. 71, 72)

During cross examination the petitioner was questioned regarding trial counsel's alleged ineffectivness for failing to obtain video footage concerning the incident. The petitioner acknowledged that the lack of a

---

[4] The transcript abbreviation for repeat felon is erroneous; See: 204 Pa.Code §303.4(a)(2); 303.16(b).

video recording was discussed at trial and raised by trial counsel. (Id. N.T. 44).

The Commonwealth additionally attempted to cross examine the petitioner regarding the purported inconsistent statements, however, the petitioner was unable to identify any statement, yet alone one which was inconsistent with an identified witness who testified during trial.

Trial counsel, David Lampman, Esquire, initially indicated there was no transcript of jury selection as it was agreed a stenographer was unnecessary. "It's been my experience that in just about all the cases I've done jury selection is off the record". (Id. N.T. 49, 50). Furthermore, Attorney Lampman had no recollection of any jurors' potential relationship with a witness or victim or that the defendant, during jury selection, called his attention to any issue. (Id. N.T. 50).

Regarding statements of witnesses, Attorney Lampman stated he had in his possession reports of interviews of the correction officers who testified during trial. (Id.N.T. 51).

During cross examination by petitioner's counsel, Attorney Lampman indicated he could state "without any hesitation" that if potential jurors articulated a relationship with alleged victims he would have moved to strike

11

the potential juror for cause and if not granted he would have used a preemptory challenge. (Id. N.T. 56).

Corporal Christopher Wilson, a member of the Pennsylvania State Police, was called by the Commonwealth and initially stated he was responsible for approximately ninety-five percent of the criminal investigations which have occurred over the last 10 years at the State Correctional Institute at Dallas.

This witness indicated there are a number of areas under video surveillance at the institution as well as "a lot of areas that are not under video surveillance". This witness further explained that the surveillance system is recorded via camera and then put on a hard drive. It is a continuous recording device and the span of time that the images remain available "depends on how active the camera is as to whether or not it's a static camera or whether or not it is a motion – activated camera. It has been my experience over the last 10 years that right around 30 days is just about as far as you can get images off of that". (Id. N.T.62).

If an investigator wishes to view something he or she must actually go into a secure server room with a DVD and copy the relevant time frame from and individual camera. (Id. N.T. 62, 63).

12

Parenthetically, as previously indicated, the time frame between the incident and the actual arrest of the petitioner in the above captioned matter is approximately one year.

Corporal Wilson additionally testified a review of the state police file in this case reflects no DVD was created from the security system and there was no DVD listed on any property record in possession of the state police. (Id. N.T. 63). Corporal Wilson explained that had a DVD been requested by the investigating officer, it would have been made part of the property record.

During cross examination by petitioner's counsel Corporal Wilson painstakingly explained there are no cameras inside the actual housing units nor would there be a camera inside the shower area in question. Rather, the camera in the restricted housing unit in which the petitioner was located is outside and depicts a view of the hallway of the inmates coming down into the shower area and "briefly glimpses the door". (Id. N.T. 65). Corporal Wilson further explained the camera "does not even show far enough inside the door to even get a picture of the closest cell, which is where the individual showered. In a restricted unit when individuals are taking a shower they are actually in cells within the shower unit." (Id. N.T. 65).

13

Corporal Wilson additionally explained the substantial unlikelihood of observing "the changing of the people coming in and maybe things flying outside the door if the door was being held open [ ]". (Id.N.T. 66,67).

## APPLICABLE LAW

Recently, in Commonwealth v. Feiquin Akbarr, (2604-2011; slip opinion filed May 13, 2015) this court set forth the analytical framework within which to consider claims of ineffective assistance of counsel.

We begin by observing the Pennsylvania Supreme Court, quoting Strickland vs. Washington, 104 S.Ct. 2052(1984), instructs judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. Commonwealth v. Saranchak., 866 A.2d 292, 304 (Pa. 2005.) The Saranchak court concluded that if counsel's actions were strategically reasonable given the information available to him or her, or stated alternately from his or her perspective at the time, no ineffectiveness can be found.

In Commonwealth v. Reaves, 923 A.2d 1119 (Pa. 2007) Justice Castille, writing for the court, reviewed applicable authority relating to an ineffectiveness claim. The standard, commonly referenced as the

14

Strickland/Pierce[5] test requires that a petitioner must plead and prove both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. To demonstrate actual prejudice, the defendant must show that there is a reasonable probability, but for counsel's unprofessional errors, that the result of the proceeding would have been different.[6] Reaves indicates to better focus the Strickland analysis our Supreme Court has applied the performance part of the test by looking both to the arguable merit of the claim lodged against counsel as well as the objective reasonableness of the path taken, or not taken, by counsel. The constitutional ineffectiveness standard requires a petitioner to rebut the presumption of professional competence by demonstrating; (1) the underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the proceedings would have been different. A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim.

---

[5] Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).

[6] The Pennsylvania Supreme Court has refused to find ineffectiveness where the defendant does not demonstrate prejudice, that is, the verdict is implicated. Commonwealth v. Clark, 961 A.2d 80, 91, 93 (Pa. 2008).

15

It cannot be overemphasized that the aforementioned precedent establishes it is incumbent upon a petitioner to both plead and prove counsel's performance was deficient and that the deficient performance prejudiced the defense. The analytical framework and determinations voiced in the aforementioned Pennsylvania Supreme Court opinions were reiterated in Commonwealth v. Steele, 961 A.2d 786 (Pa. 2008) and Commonwealth v. Daniels, 963 A.2d 409 (Pa. 2009). The Steele Court rejected numerous ineffective assistance claims in the context of a conviction for three counts of first degree murder and the imposition of the death penalty. In finding multiple issues regarding forensic evidence waived, the opinion instructs it is incumbent upon the petitioner to set forth and individually discuss substantively each prong of the Pierce test. Where a petitioner/appellant fails to set forth all three prongs of the ineffectiveness test and meaningfully discuss each of them, he is not entitled to relief, and a reviewing court will be constrained to find such claims waived for lack of development. (Id., 961 A.2d at 797). This admonition was echoed by the Daniels court. 963 A.2d at 419.

Generally, where matters of strategy and tactics are concerned, counsel's advice is deemed constitutionally effective if he or she chooses a particular course that has some reasonable basis designed to effectuate the client's interest. A claim of ineffectiveness cannot succeed through comparing, in

16

hindsight the strategy employed with alternatives not pursued. Commonwealth v. Puksar, 951 A.2d 267 (Pa. 2008). Indeed, the ultimate focus of the ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract. Commonwealth v. Colavita, 993 A.2d 874, 895 (Pa. 2010). Colavita notes with approval authority establishing the deference to trial counsel that is required under Strickland/Pierce is a deference that arises from the appreciation of the art involved in the practice of law generally, and in the defense function particularly. (Id. 993 A.2d at 895). In reversing the lower court's finding of ineffective assistance, the Supreme Court instructs care must be taken to recognize the limits of finding counsel ineffective based on a hindsight evaluation. (Id. 993 A.2d at 894 n. 13). Additionally, Colavita reiterates the Commonwealth bears absolutely no burden where a defendant raises a claim of counsel's ineffectiveness.

We again remind all counsel, as our court did in Commonwealth v. Robinson, 99 Luz. Leg. Reports 115 (2009), that it is simply not enough to make a bald faced assertion that trial counsel was ineffective in doing or failing to do something, it is rather petitioner's absolute obligation to plead and prove each of the Strickland-Pierce prongs. It is not this court's obligation, inclination, or prerogative to contemplate or construct how each and every prong of the tripartite test has been satisfied.

17

Pennsylvania jurisprudence regarding the alleged ineffective assistance of appellate counsel is clear. Firstly, we observe that a criminal defendant has no constitutional right to compel an appointed lawyer to argue non –frivolous issues that a defendant wishes to press but counsel decides and determines, in the exercise of his or her professional judgment, not to present to an appellate court. Jones v. Barnes, 463 U.S. 745, 751-752 (1983).

In Commonwealth v. Jette, 23 A.3d 1032 (Pa. 2011) the Pennsylvania Supreme Court reviews several principles regarding appellate advocacy. Quoting from previous precedent the opinion observes that criminal defendants often believe that the best way to pursue their appeal is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated, presents the greatest likelihood of success. The opinion further notes it is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of those he or she believes pose a greater likelihood of success. This process of winnowing weaker arguments and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy. Experienced advocates since time immemorial emphasize the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. For judges to second-guess reasonable professional

18

judgments and impose on appointed counsel a duty to raise every colorable claim suggested by a client would disservice the very goal of vigorous and effective advocacy. ( Id. 23 A.3d at 1042, 1043; citations and quotations omitted.)

To establish the ineffectiveness of appellate counsel evidence presented during the PCRA hearing must demonstrate exactly how appellate counsel was ineffective. This, as noted by the Pennsylvania Supreme Court in Commonwealth v. Koehler, 36 A.3d 121, 141 (Pa. 2012), would typically entail the presentation of evidence demonstrating appellate counsel's thought process in presenting the claim. Alternately stated, the PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal. The petitioner must show appellate counsel's ineffectiveness by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome; or by specifically alleging the winning claim or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was inconsistent by comparison. If the petitioner fails to demonstrate how appellate counsel's presentation on direct appeal was constitutionally deficient he has failed to demonstrate the arguable merit of his effectiveness claim, and is not entitled to relief.

19

## ANALYSIS

Appellate counsel asserts trial counsel was ineffective in failing to obtain video footage "near where the incident occurred, video footage that the Commonwealth possessed". We simply note there is not a scintilla of evidence in the instant record demonstrating the Commonwealth possessed video footage of the incident. Indeed the record establishes the opposite, that no video existed and that the defendant's arrest occurred approximately 1 year after the incident occurred. Furthermore, Corporal Wilson's testimony unequivocally establishes that assuming video had been available its usefulness, in all likelihood, was negligible. In any event the alleged error is neither postured nor analyzed pursuant to the aforementioned tripartite test.

Appellate counsel next asserts trial counsel was ineffective "in failing to properly use inconsistent statements of witnesses that would be inconsistent with their statements in Affidavit of Probable Cause". The petitioner has failed to identify any purported statement or statements by a Commonwealth witness or witnesses or how these statements were inconsistent, as that term is understood in Pennsylvania jurisprudence, with any statement uttered during trial; and if identified and inconsistent how counsel's failure to employ them establishes ineffective assistance under Pierce/Strickland. Indeed, this assertion of error is frivolous in every sense of the word.

20

Appellate counsel next asserts trial counsel was ineffective "in failing to object to two jurors who knew corrections officer and victim Joe Wilds".

Initially, to the extent required for our determination of this issue, we resolve the issue of credibility against the petitioner and in favor of trial counsel, who as previously indicated, did not recall any potential juror articulating a relationship with an alleged victim or any discussion with the petitioner regarding the petitioner's desire to strike a potential juror. Moreover, neither petitioner's counsel during the proceedings, nor appellate counsel, has made even a meager attempt at demonstrating how trial counsel was ineffective pursuant to Strickland/Pierce.[7]

Appellate counsel next argues trial counsel was ineffective "on appeal for failing to properly challenge the underlying conviction". We are perplexed at this assertion for several reasons. Initially, if one actually examines the trial transcript, it is readily apparent that trial counsel "demurrered" to the Commonwealth's evidence at the conclusion of the case in chief.[8] Trial counsel

---

[7] The existence of a relationship with a victim or witness, itself, is not determinative of disqualification. See generally, Commonwealth v Briggs, 12 A.3d 291, 333-334 (Pa. 2011).

[8] The use of the term demurrer is archaic. Pa.R.Crim.P. 606 (a) (1) provides, in part, that challenges to the sufficiency of evidence may be made pursuant to a motion for judgment of acquittal at the conclusion of the Commonwealth's case in chief. The Rule's comment provides that the inadvertent use of the word "demurrer" when "motion for judgment of acquittal" is now appropriate does not affect an otherwise valid sufficiency challenge.

21

argued the Commonwealth failed to establish the elements of aggravated assault because the evidence did not establish the defendant intended to cause serious bodily injury. Additionally, trial counsel argued the Commonwealth failed to establish the defendant in fact has HIV, referencing Dr. Stanish's testimony. Trial counsel additionally argued the Commonwealth failed to prove the defendant was aware of his HIV or possible HIV status, again referencing Dr. Stanish's testimony. (Trial Transcript N.T. 178 through 180).

In rejecting trial counsel's arguments Judge Brown noted that the issues raised are ones of fact for the jury to consider. Specifically, Judge Brown noted "[T]he defendant's knowledge of HIV, it's hard for me to believe that a doctor would treat him for HIV but not let the defendant know he had HIV. It doesn't make a lot of sense." (Id. N.T. 181).

Judge Brown further referenced case law considering the sufficiency of evidence in context where blood, saliva and feces are thrown at correctional officers. These cases, Commonwealth v. Alston, 748 A.2d 667 (Pa. Super. 2000) and Commonwealth v. Brown, 605 A.2d 425 (Pa. Super. 1992) are specifically referenced in the trial transcript. (Id. N.T. 181, 182).

Having reviewed the trial transcript we categorically agree with Judge Brown. Moreover, having considered the testimony of Attorney Buttner regarding his decision not to pursue a sufficiency argument, we find absolutely

22

no basis to conclude Attorney Buttner was ineffective. Again, neither petitioner's counsel nor appellate counsel has made any attempt to articulate how Attorney Buttner was ineffective as that term is understood pursuant to the case law previously discussed in this opinion.[9]

Finally, appellate counsel asserts that trial counsel was ineffective in failing to challenge the presentence investigation which was incorrect and listed an improper conviction "that increased the prior record score". Not only is there no evidence to support this assertion of error, the testimony of Ms. Augello and the agreement of petitioner's counsel and the petitioner establish its absolute lack of merit.


END OF OPINION

ORDER ATTACHED AS PAGE 24

---

[9] The import of Dr. Stanish's testimony regarding defendant's knowledge of his disease requires nothing more that the ability to understand the English language and the application of logic and common sense.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

                                    :   OF LUZERNE COUTNY

       V.

                                        -CRIMINAL-LAW

DAVID CREWS,                         :

            Defendant

                    : NO:   3228   OF   2010

---

## ORDER

AND NOW, this 18 day of August, 2015, it is hereby ORDERED ADJUDGED AND DECREED:

1. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to serve a copy of this Order and Opinion on all Counsel of Record pursuant to Pennsylvania Rule of Criminal Procedure No. 114.

2. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to docket this Order and Opinion and to forthwith transmit same to the Superior Court of Pennsylvania.

BY THE COURT:

PIERANTONI,         J.

cc: District Attorney's Office
Matthew P. Kelly, Esq.

24