J-S02023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTWON CHAMBERS, | : | |
| | : | |
| Appellant. | : | No. 1691 EDA 2017 |

Appeal from the PCRA Order, May 4, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0006634-2010,
CP-51-CR-0006796-2010.

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                **FILED APRIL 11, 2019**

Antwon Chambers appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court has previously summarized the pertinent facts as follows:

> The convictions at hand stem from events that occurred between November 2009 and January 2010 when [Chambers] and his cousin, Derrick Holley ("Holley"), engaged in a violent crime spree, robbing and injuring local marijuana dealers.  On November 19, 2009, Officer Daniel Adams responded to a report of a shooting on the 4800 block of Marshall Street.  Upon arrival, he found Derrick Holland ("Holland"), a local marijuana dealer, lying on his back in the middle of the street.  Holland had been shot in the head, arm, and leg.  Holland's cell phone was recovered from the scene and telephone records indicated that he had been in contact with [Chambers] 13 times on the night of the shooting.  In fact, the last call to Holland's cell phone

was from [Chambers] minutes before they located Holland at approximately 8:00 p.m.

Holland was transported to the hospital where he remained in a medically induced coma for a month. After Holland awoke from his coma and his ability to communicate gradually improved, the police regularly started interviewing him. At each interview, Holland identified [Chambers] as the man who shot him. At trial, Holland testified that [Chambers] was the person who shot him while Holley looked on. Holland's father also testified that his son told him [Chambers] was the perpetrator of the crimes.

On December 30, 2009, [Chambers] contacted Christopher Johnson, another local marijuana dealer he knew from the neighborhood and arranged for the men to meet. [Chambers], accompanied by Holley and another masked man, arrived at the agreed upon location. [Chambers] put a silver handgun up against the victim's chest and declared, "You know what it's hitting for," which Johnson understood meant that he was being robbed. [Chambers] and Holley took cash and marijuana from him and fled.

On January 15, 2010, Jason Rosario, another local marijuana dealer, exited his home on the 2800 block of North Franklin Street. Edward Johnson ("Edward"), Rosario's former high school classmate, drove up in a white Chevrolet Monte Carlo with [Chambers] accompanying him. The men exited the vehicle and physically pinned Rosario up against the wall. [Chambers] pressed the muzzle of his .45 caliber semi-automatic handgun against Rosario's chin and demanded that he "give [his] shit up" and [threatened] to kill Rosario's mother. Rosario threw his wallet on the ground; upon discovering that there was no money inside, Edward and [Chambers] left. Johnson, the previous victim, watched the robbery from the window of his nearby row home. After the robbery, Rosario called the police and [Chambers] was then arrested a short distance away where he was attempting to dispose of his gun under a car. Rosario then positively identified [Chambers] as the gunman.

Based on the statements to police by Rosario, Johnson and Holland, [Chambers] was charged with crimes against

Johnson and Holland. While in prison awaiting trial, [Chambers] made several phone calls to his mother and girlfriend that were recorded by prison officials. In the calls, [Chambers] urged his girlfriend to "mak[e] sure people in the neighborhood talk to the victims of these crimes" and "make sure you have my boys go talk to him," and he urged his mother to "make sure you go talk to their moms to keep them, from coming to court.

*Commonwealth v. Chambers*, 69 A.3d 1295 (Pa. Super. 2013), unpublished memorandum at 1-4 (footnotes and citations omitted).[1]

The Commonwealth charged Chambers at two separate docket numbers regarding the crimes committed against Holland and Johnson, including attempted murder, aggravated assault, criminal conspiracy, possession of an instrument of crime, and two firearm violations. Prior to trial, the court granted the Commonwealth's motion to consolidate the cases, pursuant to Pa.R.Crim.P. 582(a)(1), and to admit other acts evidence, pursuant to Pa.R.E. 404(b)(2). A jury trial began on October 18, 2011. Among other evidence, the Commonwealth presented the testimony and statements to police of Holland, and the statements to the police of Johnson and Rosario. Both Johnson and Rosario disavowed their prior statements while on the stand. Chambers also stipulated to the admission of his recorded prison telephone calls.

_____

[1] Johnson also reported a fourth robbery to police. Johnson claimed that Chambers and Holley in the early fall of 2009, robbed a drug dealer named "Tito," shooting him six times and stealing marijuana from him. *See Chambers*, unpublished memorandum at 3, n.2. Holley died from a fatal gunshot wound two months prior to trial. *See id.*, at 4, n.5.

On October 21, 2011, the jury convicted Chambers of all the charges. On December 16, 2011, the trial court sentenced Chambers to an aggregate term of 27 ½ to 55 years of imprisonment. Chambers filed a timely appeal to this Court. Chambers raised four issues, including a claim that the trial court erred in denying the motion for mistrial he sought after the prosecutor asked Johnson if threats from people in the neighborhood had compelled him to recant his statements to police. Finding no merit to any of Chamber's contentions, we affirmed his judgment of sentence on March 19, 2013. **Chambers**, **supra**. Chambers did not seek further review.

On January 16, 2014, Chambers filed a timely PCRA petition. The PCRA court appointed counsel. PCRA counsel filed an amended petition on July 29, 2015. On April 5, 2017, the PCRA court issued Pa.R.Crim.P. 907 notice of its intention to dismiss Chamber's PCRA petition without a hearing. Chambers filed a response. By order entered May 4, 2017, the PCRA court dismissed the petition. This appeal followed.[2] Both Chambers and the PCRA court have complied with Pa.R.A.P. 1925.

Chambers raises the following issues:

A. Did the PCRA court err when it dismissed Chambers' PCRA petition, as Chambers was denied effective assistance of counsel, due to trial counsel failing to object to the admission of the Commonwealth's Pa.R.E. 404(b)

---

[2] Chambers filed a single notice of appeal that included both docket numbers on May 17, 2017. Thus, our Supreme Court's decision in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), is inapplicable.

prior bad acts evidence (the alleged robbery of Rosario), which was not included in the trial of the instant matter?

B. Did the PCRA court err when it dismissed Chambers' PCRA petition, as Chambers was denied effective assistance of counsel, due to trial counsel failing to object to the erroneous cautionary instruction given by the trial court regarding Chambers' motion for a mistrial based on inadmissible testimony referring to witness intimidation and subsequent trial court instruction?

*See* Chambers' Brief at 2.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court

otherwise abused its discretion in denying a hearing. **_Commonwealth v. Blakeney_**, 108 A.3d 739, 750 (Pa. 2014).

Both of Chambers' issues allege the ineffective assistance of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. **_Commonwealth v. Johnson_**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **_Id._** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. **_Id._** at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." **_Commonwealth v. Stewart_**, 84 A.3d 701, 707 (Pa. Super. 2013) (_en banc_). "Whether the facts rise to the level of arguable merit is a legal determination.'" **_Id._** (citing **_Commonwealth v. Saranchak_**, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. **_Commonwealth v. Collins_**, 545

- 6 -

A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Ervin**, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." **Commonwealth v. Clark**, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken." **Stewart**, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a chosen strategy was unsuccessful. **Commonwealth v. Buksa**, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." **Stewart**, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" **Id.** (quoting **Commonwealth v. Rathfon**, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." **Commonwealth v. Tharp**, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the

prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995).

In his first claim, Chambers argues that, although the trial court gave a limiting instruction when Rosario testified, "Trial counsel should have objected to the admission of this testimony in the first place, as the probative of this evidence was outweighed by its potential for unfair prejudice." Chambers' Brief at 22. According to Chambers:

> The allegation involving [Rosario] was that he was robbed by [Chambers]. This allegation, of course, was not proven beyond a reasonable doubt before nor after the trial in the instant matter, as no charges involving this alleged Robbery were ever brought against [Chambers]. The only possible reason for calling [Rosario] to testify against [Chambers] was to inflame the jury and to convince them that [Chambers'] character was such that he was inclined to commit acts of violence – i.e. Attempted Murder and Robbery.

Chambers' Brief at 22-23. Chambers asserts that, "without [Rosario's] testimony, it is likely that [he] would *not* have been found guilty in this matter." ***Id.*** at 23 (emphasis in the original). We cannot agree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Drumheller***, 808 A.2d 893, 904 (Pa. 2002). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or

partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa. Super. 2005).

The admissibility of prior bad acts of a defendant is governed by Pennsylvania Rule of Evidence 404(b), which reads as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\*\*\*

**(b)  Crimes, Wrongs, or Other Acts.**

(1) *Prohibited uses*.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)  *Permitted Uses.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

"[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004) (*en banc*).  Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.***  Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive,

identity, or absence of mistake or accident. ***Commonwealth v. Chmiel***, 889 A.2d 501 (Pa. 2005). When offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 84 A.2d 657 (Pa. 2014).

Chambers' argument ignores the fact that, as noted above, prior to trial, the trial court granted the Commonwealth's motion to admit evidence of his robbery of Rosario on January 15, 2010.

Moreover, the PCRA court agreed with the trial court's pretrial ruling that the evidence of the Rosario robbery was probative of a common plan, scheme, design and identity of Chambers due to the many similarities in the perpetration of the crimes. ***See*** PCRA Court Opinion, 12/4/17, at 5. In addition, the court found that the potential prejudicial impact did not outweigh "the strong probative" value. ***Id.*** Finally, the PCRA court found that any prejudicial impact was further diminished by the trial court's cautionary instruction to the jury. ***Id.*** at 6.

Our review of the record supports the PCRA court's conclusions. The Commonwealth presented evidence at trial that Chambers committed a series of robberies of local marijuana dealers. Although Rosario was one of Chambers' victims, the Commonwealth, for whatever reason, chose not to prosecute Chambers for this incident. Nevertheless, its occurrence was probative of Chambers' identity and pattern of crime. The trial court cautioned the jury as to the limited purpose for Rosario's testimony:

> You have heard evidence tending to prove that [Chambers] was guilty of robbery of [Rosario] in January 2010, a matter of which he has not been tried as of today. The evidence is before you for a limited purpose; that is, for the purpose of tending to prove a common scheme, plan, design, identity or motive and also to show that [Chambers] has access to weapons. This evidence must not be considered by you in any way other than for the purposes I stated. You must not regard this evidence as showing that [Chambers] is a person of bad character or criminal tendencies from which you may be inclined to infer guilt.

N.T., 10/20/11, at 68-69. It is well settled that juries are presumed to follow the court's instructions. *Commonwealth v. Windslowe*, 158 A.3d 698, 713 (Pa. Super. 2017).

In addition, we note that Chambers' bare assertion of prejudice is insufficient to meet his burden for post-conviction relief. This is especially true where, as here, ample evidence supported Chambers' conviction for crimes against Holland and Johnson independent of Rosario's testimony. In Holland's trial testimony, and Johnson's prior statements to police and/or preliminary hearing testimony, both men unequivocally identified Chambers as the perpetrator of the crimes committed against them. Thus, Chamber's first ineffectiveness claim fails.

In his second claim of ineffectiveness, Chambers argues that trial counsel was ineffective for failing to object to a cautionary instruction given by the trial court once the court denied Chambers' motion for mistrial. The exchange that prompted the motion for mistrial occurred while the prosecutor was questioning Johnson on direct examination. After Johnson had recanted

his written statements to the police in which he identified Chambers as one of his robbers, the following exchange occurred:

> [THE PROSECUTOR]: And isn't it true that you were being threatened and harassed in your neighborhood?
>
> [TRIAL COUNSEL]: Objection.
>
> THE COURT: He can ask the question.
>
> A. No.
>
> [THE PROSECUTOR]: No, it's not true? Isn't it true that you were shot at a few months ago?
>
> [TRIAL COUNSEL]: Objection.
>
> A. No.
>
> [THE PROSECUTOR]: It's not true? You weren't shot at? So if your mother told me about that, she would not be telling the truth?
>
> [TRIAL COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> A. I don't know.
>
> [THE PROSECUTOR]: Isn't it true that several different men have approached you who are friends of [Chamber's] –
>
> [TRIAL COUNSEL]: Objection.
>
> [THE PROSECUTOR]: (Continued) – and called you a snitch?
>
> [TRIAL COUNSEL]: Judge, objection, and I'm asking for a mistrial.

N.T., 10/19/11, at 91-92.

As noted above, in his direct appeal, we rejected Chambers' claim that the trial court erred in denying his motion for mistrial:

[Chambers] argues that the trial court erred in denying his motion for a mistrial sought after the prosecutor asked Johnson if threats from people in the neighborhood had compelled him to recant his statements to the police about [Chambers]. The trial court denied [Chambers'] request for a mistrial but essentially sustained the objection and granted his request for a curative instruction. No relief is due.

*Chambers*, unpublished memorandum at 9 (citations omitted).

After noting our standard of review, we continued:

Presently, the trial court addressed the issue by concluding that this isolated comment combined with the immediate curative instruction did not sufficiently prejudice [Chambers] so as to deny him a fair trial. The defense had stipulated to the admission of prison recordings of phone calls [Chambers] had made to his girlfriend and mother, urging that they make "sure people in the neighborhood talk to the victims of these crimes," "make sure you have my boys talk to him," and "make sure you go talk to their moms to keep them from coming out." Again, Johnson recanted his statements to the police regarding [Chambers'] involvement in the gunpoint robbery and Johnson refused to cooperate on the witness stand, thus, the prosecutor inquired about witness intimidation by referring to the transcripts of Johnson's preliminary hearing testimony. Such did not have the unavoidable effect of depriving [Chambers] of a fair and impartial trial. Any prejudice to [Chambers] was effectively cured by the court's immediate cautionary instructions, which [Chambers] did not object to.

*Id.* 10 (citations omitted).

Chambers now claims that trial counsel was ineffective for failing to object to the trial court's curative instruction, which read as follows:

THE COURT: All right. In the questioning of [Johnson], the [prosecutor] made reference to a shooting that took place a few months ago as well as information that was received about the shooting from [Johnson's] mother. You

- 13 -

are to disregard these questions in your determination of whether the Commonwealth has proven [Chambers] guilty beyond a reasonable doubt.

Questions by attorneys are not evidence for your consideration.

N.T., 10/19/11. 100-01.

According to Chambers, the trial court's instruction "did *not* inform the jurors that they were not to use this testimony as probative of [Chambers'] guilt in this matter nor as a blemish on is character. As this is the case, this instructive was not curative at all." Chambers' Brief at 26 (emphasis in original). Chamber further contends that, because trial counsel failed to object to the instruction, "as a result of the admission of this testimony, [Chambers] did not receive a fair trial." ***Id.***

Citing this Court's reasoning as reproduced **supra**, the PCRA court rejected this ineffectiveness claim because the "objection would have been fruitless because the claim is without merit." PCRA Court Opinion, 12/4/17, at 7. We agree.

Initially, we note that Johnson answered "no" or "I don't know" to every question posed by the prosecutor. Thus, there was no prejudicial "testimony" to caution the jury about. Rather, as noted in the above instruction, the trial court cautioned the jury that questions posed by attorneys are not evidence. As we noted in Chambers' direct appeal, in both its preliminary and closing instructions, the trial court had reiterated this admonition. **See Chambers**, unpublished memorandum at 11, n.6. Once again, our case law holds that

juries are presumed to follow the trial court's instructions.  ***Windslowe***, ***supra***.  Therefore, we agree that the trial court would have denied any objection made by trial counsel.  Chambers' second ineffectiveness claim fails.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/19