J-S33020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARRELL STALLINGS | : | |
| | : | |
| Appellant | : | No. 1825 EDA 2019 |

Appeal from the Order Entered May 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013251-2008

BEFORE: DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED AUGUST 31, 2020**

Darrell Stallings (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

At 6:05 p.m. on April 12, 2008, Appellant shot and killed Gregory Barber (Barber) and shot, but did not kill, James Locke (Locke) near the northwest corner of 26th and Silver Streets in Philadelphia. On September 16, 2010, a jury convicted Appellant of first-degree murder, attempted murder, aggravated assault, and firearms not to be carried without a license.[1] The trial court convicted Appellant of persons not to possess firearms[2] after the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 901, 2702(a)(1), 6106(a).

[2] 18 Pa.C.S.A. § 6105(a).

jury returned its verdict on the remaining charges. The same day, the trial court sentenced Appellant to life in prison without parole for the first-degree murder conviction, a consecutive term of 10 to 20 years of incarceration for attempted murder, a concurrent sentence of 2 to 7 years of imprisonment for persons not to possess a firearm, and a concurrent sentence of 2 to 7 years of incarceration for firearms not to be carried without a license.

On April 11, 2012, this Court affirmed Appellant's judgment of sentence for his first-degree murder, attempted murder, and aggravated assault convictions, but vacated his judgment of sentence with respect to Appellant's firearms offenses.[3] *See Commonwealth v. Stallings*, 366 EDA 2011 at 17 (Pa. Super. Apr. 11, 2012) (unpublished memorandum). On October 12, 2012, our Supreme Court denied Appellant's petition for allowance of appeal.

On December 17, 2012, Appellant filed a timely *pro se* PCRA petition raising various ineffective assistance of counsel claims against his trial counsel. For reasons that are not entirely clear from the record, the disposition of Appellant's PCRA petition was delayed by counsel appointments and re-appointments, several time extensions, numerous continuances, and multiple judge reassignments. On October 16, 2018, the PCRA court held a hearing on Appellant's PCRA petition. On May 24, 2019, the PCRA court entered an order dismissing Appellant's petition. This timely appeal followed.

---

[3] On remand, the Commonwealth *nolle prossed* the firearms offenses.

Appellant presents the following issues for our review:

1.    Did the PCRA [c]ourt err by dismissing [Appellant's] claim that [Trial Counsel] was ineffective for failing to investigate and present a diminished capacity defense?

2.    Did the PCRA [c]ourt err by denying [Appellant's] claim that [Trial Counsel] was ineffective for giving him faulty advice that caused him to waive his right to testify at trial?

Appellant's Brief at 2.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

Both of Appellant's issues raise claims of ineffective assistance of counsel. With respect to ineffective assistance of counsel claims, our Supreme Court has stated:

It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that:   (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Id.* A PCRA petitioner must address each of these prongs on appeal. *See Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the *Pierce* elements on appeal to

this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

For his first issue, Appellant argues that the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for failing to investigate and pursue a diminished capacity defense. Appellant asserts that Trial Counsel should have presented a diminished capacity defense because prison medical staff diagnosed him with schizophrenia and bipolar disorder following his arrest. Appellant also provided expert opinion testimony in his PCRA petition from Dr. Timothy Ring, a forensic pathologist, who opined that Appellant's mental health issues may have precluded him from forming the specific intent to kill needed to commit first-degree murder. Consequently, Appellant suggests that his shooting of Barber and Locke may have been the result of a paranoid delusion and Trial Counsel's failure to pursue a diminished capacity defense was "wholly unreasonable." Appellant's Brief at 14.

Regarding the defense of diminished capacity, our Supreme Court has explained:

> A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill. ***Commonwealth v. C. Williams***, 980 A.2d 510, 527 (Pa. 2009); ***Commonwealth v. Gibson***, 951 A.2d 1110, 1131 (Pa. 2008); ***Commonwealth v. Spotz***, 896 A.2d 1191, 1218 (Pa. 2006) ("Absent an admission from [the defendant] that he had shot and killed [the victim], trial

counsel could not have presented a diminished capacity defense."). **If a defendant does not admit that he killed the victim, but rather advances an innocence defense, then evidence on diminished capacity is inadmissible**. *Commonwealth v. Laird*, 988 A.2d 618, 632 (Pa. 2010).

A diminished capacity defense "does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent." *C. Williams*, *supra* at 527 (citing *Gibson*, *supra* at 1131). For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. *Commonwealth v. Saranchak*, 866 A.2d 292, 299 (Pa. 2005). To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. *Commonwealth v. Rainey*, 928 A.2d 215, 237 (Pa. 2007); *Spotz*, *supra* at 1218. . . . **Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity**. *Commonwealth v. Bracey*, 795 A.2d 935, 946 (Pa. 2001).

In numerous prior cases before this Court, defendants who had maintained their innocence during trial have subsequently raised post-conviction claims of ineffective assistance of trial counsel for failure to present and/or to investigate a defense of diminished capacity. We have consistently declined to hold that trial counsel was ineffective for failing to advance a defense that directly and irreconcilably conflicted with the accused's claims of innocence. *Rainey*, *supra* at 237 (declining to conclude that defense counsel was ineffective for failing to present a diminished capacity defense when the appellant was unwilling to admit that the shot the victim); *Spotz*, *supra* at 1217-19 (declining to conclude that trial counsel was ineffective for failing to present a diminished capacity defense based on mental defect or voluntary intoxication because it would have required the appellant to concede liability, which was inconsistent with his averments of innocence and his recapitulation of events to trial counsel); *Commonwealth v. R. Williams*, 846 A.2d 105, 112 (Pa. 2004) ("[E]ven if counsel had thoroughly investigated [the appellant's] past, the presentation of a diminished capacity defense would have directly contradicted [the appellant's] assertions that someone else had committed the crime, and thus would not have been an available defense."). We have recently stated that "whether addressing a claim of counsel's

failure to investigate or failure to present [a diminished capacity defense], this Court has employed the same analysis." ***Gibson***, ***supra*** at 1132.

***Commonwealth v. Hutchinson***, 25 A.3d 277, 312-13 (Pa. 2011) (emphasis added, citations modified, footnote omitted).

Additionally, the evidence must provide insight as to the defendant's mental state at the time of the offense, "the only relevant time for a diminished capacity defense." [***Spotz***, 18 A.3d at 319] (citing [***Rainey***, 928 A.2d at 237] (requiring a defendant advancing a defense of diminished capacity based on mental defect to "establish [that he or she] had a mental defect at the time of [the] murder that affected his [or her] cognitive abilities of deliberation and premeditation necessary to formulate specific intent to kill.")).

***Commonwealth v. Mason***, 130 A.3d 601, 631 (Pa. 2015).

In this case, there is no evidence that Appellant was willing to concede that he shot Barber and Locke prior to PCRA proceedings. At the outset of the trial, the following transpired:

[Trial Counsel]: The defense in this case is reasonable doubt, because [Appellant] knows that the witnesses said different things to the police already, and he believed that the witnesses were going to come in and change their tune. I discussed that with him. . . .

THE COURT: Do you recall that, [Appellant]?

[Appellant]: Yes, I recall that. That's what I wanted him to question the witness about, because they were giving inconsistent statements, and I was pretty sure he would want them for trial.

[Trial Counsel]: . . . That's what we discussed about the strategy, Judge, and that's what I told you before I even read my notes. That's the strategy in this case, because that's all we have to work with, [t]hat is what we have to work with.

N.T., 9/13/10, at 26-27.

Thus, as Trial Counsel's and Appellant's statements indicate, Appellant's strategy at trial was an acquittal based on his claim of innocence. *See id.* As our Supreme Court has made clear, "the authority to concede criminal liability and to authorize the presentation of a diminished capacity defense rests solely with the accused." *Hutchinson*, 25 A.3d at 313. Although the record reflects that both Appellant and Trial Counsel were aware that Appellant suffered from schizophrenia and bipolar disorder, there is no evidence indicating that Appellant was willing to concede that he shot Barber and Locke prior to the filing of his PCRA petition. Moreover, there is also no evidence indicating that Appellant's mental health disorders affected his mental state at the time of the offense. *See id.*; *see also Mason*, 130 A.3d at 631. Our Supreme Court has expressly precluded PCRA relief under these circumstances. *See id*. Accordingly, we conclude that the PCRA court did not err in denying Appellant's claim that Trial Counsel was ineffective for not pursuing a diminished capacity defense.

For his second issue, Appellant argues the PCRA court erred in dismissing his claim that Trial Counsel was ineffective in advising Appellant not to testify on his own behalf. Appellant asserts that Trial Counsel informed him that the Commonwealth could cross-examine him on all of his past convictions, which were all non-*crimen falsi* convictions, in order to attack his character were he to testify. Appellant contends that because Trial Counsel should have presented a diminished capacity defense, thereby conceding

criminal liability, Appellant, had he have testified, "would have had no reason to proffer character witnesses for peacefulness or law abidingness." Appellant's Brief at 20.

As our Supreme Court has explained:

The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000).

Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement[,]" *i.e.*, *crimen falsi*. Pa.R.E. 609(a). This Court has also stated:

Pennsylvania courts [are] cautious when considering whether to admit evidence of prior convictions for purposes of impeaching the credibility of a defendant testifying on his own behalf." However, our decisional law recognizes that evidence of a non-*crimen falsi* conviction . . . may be admitted into evidence after the defendant raises the issue of his good character.

*Commonwealth v. Murphy*, 182 A.3d 1002, 1008 (Pa. Super. 2018) (citations omitted) (explaining that the prosecution can "cross-examine a

defendant concerning his past convictions to repudiate specific evidence of good character offered by that defendant").

At Appellant's PCRA hearing, Trial Counsel testified, upon questioning by Appellant's PCRA counsel, regarding his advice to Appellant on his decision whether to testify at trial:

> Q.    So in fact, didn't you advise [Appellant], when you were talking to him about testifying, that if he testified, his criminal conviction would come in?
>
> A.    No.
>
> Q.    Do you have a recollection of that?
>
> A.    I can tell you this.  It will take awhile to explain, but I will have to explain. The answer is, I have no independent recollection of my conversation with your client about whether or not --
>
> THE COURT:  At the time, he was your client?
>
> A.    At the time, he was my client about whether or not he had *crimen falsi* background, whether or not he had non[-]*crimen falsi* in his background, I'm not sure.  I discussed it with him many times, because -- yes.
>
>     So that the answer is that I do not specifically recall, but I would never, ever have told him not to testify because of the fact that he had *crimen falsi* because he doesn't have *crimen falsi*.
>
> Q.    But you don't recall whether or not you told him --
>
> A.    I don't specifically recall.
>
> Q.    -- that if he testified, his prior convictions would come in?
>
> *    *    *
>
> A.    I don't have a specific recollection of my conversation with your client -- my former client and your client -- about his right to

testify as it pertains to *crimen falsi* or non[-]*crim*[*en*] *falsi* convictions.

However, it's my practice to always discuss this fully with all of my clients, and I would have to say that from all the years I've been doing this, that I did it with him and fully knew, understood, the import of his criminal record as it would affect his right to testify or my decision in informing him whether or not to testify.

N.T., 10/16/18, at 16-18.

As Trial Counsel's testimony indicates, the record contains no evidence supporting Appellant's claim that Trial Counsel advised him not to testify on his own behalf because he had prior non-*crimen falsi* convictions. ***See id.*** Moreover, even if Trial Counsel had given Appellant such advice, Appellant's argument that the Commonwealth could not use his non-*crimen falsi* convictions against him because Trial Counsel should have presented a diminished capacity defense is unavailing. As we explained above, the record contains no indication that Appellant was willing to concede criminal liability at the time of trial, and Appellant therefore cannot fault Trial Counsel for failing to raise a diminished capacity defense. Thus, had Appellant testified on his own behalf at trial and introduced evidence of his good character, the Commonwealth could have used his prior non-*crimen falsi* convictions against him. ***See Murphy***, 182 A.3d at 1008. Accordingly, the PCRA court likewise did not err in denying Appellant relief on his second issue.

Based on the foregoing, we conclude that the PCRA court did not err in finding Appellant's ineffective assistance of counsel claims meritless and dismissing his PCRA petition.

Order affirmed.[4]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/20

---

[4] On August 15, 2020, the Commonwealth filed an Application for Extension of Time to File Brief – Second Request. Based upon our disposition of the appeal, we deny the motion as moot.